HYNDS *vs.* SHULTS and others, executors &c., and WARNER.

Where the owner of a mill-site has, by his dam, raised a certain head of water, and maintained such dam long enough to raise the presumption of a grant, he may repair his dam, for the purpose of making it tighter and more enduring, although the effect may be to keep the water more constantly at an upper level.

Making the structure more firm and tight, so as to enable the owner to enjoy the full benefit of his privilege, will not create a liability for damages, to the owners of adjacent land ; so long as the height of the dam, as repaired, is not greater than it was before.

·If the mill-owner does not, by his repairs, raise the water higher than it was before, so as to overflow lands not previously covered, no action will lie against him for damages.

MOTION for a new trial on exceptions, ordered to be heard in the first instance at the general term. Two actions were commenced, to recover damages of the defendant, Tobias Warner, and Jedediah Miller, since deceased. The first was tried before a referee, who reported in favor of the plaintiff. The judgment entered on this report was reversed on appeal. The actions were afterwards consolidated, by stipulation, and tried before Justice WRIGHT and a jury, at the Schoharie circuit, when a verdict was rendered in favor of the defend-

ants. The defendant Miller died after the first trial, and the action was continued against his executors.

The complaint alleged that the defendants owned a grist mill on West creek, below the plaintiff's land, and had " the right to obstruct the water flowing in said stream," but no right to increase the height of their dam; and that in April, 1850, they raised the dam " two feet higher than they had any right to keep and maintain it," to the plaintiff's damages, $2000.

The answer puts in issue the material allegations of the complaint; alleges the defendants' right by grant as well as by prescription, to obstruct the water to the extent of the actual obstruction; and avers that the change made in the dam did not increase its height, and that it was made in 1853, with the knowledge and consent of the plaintiff.

The mill dam in question was on West creek in Schoharie county. The plaintiff owned the land on the west side of the stream, and the defendants on the opposite side where the dam was maintained. Further up the stream the plaintiff owned the land on both sides. The defendants held under a title derived in 1840, through the plaintiff and others, and the grants embraced " all the mill dam, land covered with water, water privileges," &c.; with the right " to draw timber, stone and gravel to make, mend and secure said dam as may be necessary."

The mill dam was over fifty years old. Like most of the dams of that day, it was constructed with a frame of wood, filled with stone, and over this the usual timber plate and plank, with flush boards for the purpose of raising the water to the proper level; these being substituted in the upper portion of the dam for more expensive and more durable materials to retain the water in a low time, and to protect against ice and drifting timber. The old mill having been burnt, the defendants soon after their purchase erected a new and expensive grist mill. On the 22d of October, 1853, they proceeded to mend and secure the dam, which for forty-four

years immediately preceding had been continued in use without any material repairs. The defendants claimed that the timber plate had settled below its original level. The planking had worn away, and had been replaced from time to time. The defendants placed on the timber plate a piece of timber five inches thick, and over this two thicknesses of three-inch hemlock plank; thus *raising* the permanent structure, or as was claimed the lower portion of the dam, higher than the corresponding portion of the dam as repaired in 1809, and as was claimed *reducing* the upper portion of the dam, formed by such boards. The defendants claimed that the plaintiff assented to these alterations. There was a conflict of evidence upon most of the material facts in the case, and especially as to the height at which the permanent structure was raised; and also as to whether the structure and improvements increased the height so as to injure the plaintiff.

The court charged substantially : 1st. That the action was brought to recover damages for alleged injuries resulting from the overflowing of the plaintiff's land by the defendants' raising the mill dam. 2d. That the defendants were entitled to maintain the dam in question at the same height it had been for twenty years and upwards preceding the time of the alleged injuries. 3d. That if the jury believed that the defendants, at the time of repairing had increased the height of the dam so as to raise the water and flow it back upon the land of the plaintiff to a greater height than it had been for twenty years preceding that time, then they were liable for damages sustained in consequence of it; if it had not been raised, they were not liable. 4th. That the defendants were not confined to any specified material, or to any particular mode of construction, in keeping the dam in repair; and whether the water was detained by a structure more or less permanent, or by flush boards, it would make no difference so long as the water was not raised higher than it had been.

No exception was taken to any portion of this charge. The plaintiff's counsel, however, requested the court to charge

Hynds *v.* Shults.

that the defendants had no right to use flush boards in any other or different manner from what they had been used for twenty years prior to the commencement of the suit. That if flush boards were used before to retain the water, at seasons of low water, and not at other seasons, the defendants had no right to increase the height of the permanent structure, and substitute that portion for a portion of the width of the flush boards, and the defendants were liable for the injury the plaintiff had sustained, by means of such increase of the height of the permanent-structure.

The judge declined so to charge, but he charged substantially, that so far as the plaintiff's right to maintain the action was concerned, it depended upon the facts whether his land and premises had been overflowed at any season of the year, by the defendants' increasing the height of the water, in constructing or repairing their mill dam, beyond the usual and ordinary height of the water for twenty years previously to such construction or repairing; and that the plaintiff could not complain of the mode of repairing the dam, provided the effect had not been to increase the height of the water, and thereby overflow some parts of the plaintiff's land or premises not before overflowed. To this refusal to charge, and to the portion of the charge last made, the plaintiff duly excepted. The plaintiff's counsel also requested the court to charge that the owners of the dam acquired no right by the use of temporary flush boards to retain the water during the period of the year when the water was low, and to substitute for any portion of such flush boards a permanent structure. The court declined to charge other and differently than already charged, to which the plaintiff's counsel excepted. The other exceptions taken on the trial appear in the opinion.

*H. Smith,* for the plaintiff.

*L. Tremain,* for the defendants.

Hynds *v.* Shults.

*By the Court,* MILLER, J. This case arises upon exceptions ordered to be heard in the first instance at the general term, and no question therefore as to the weight of the evidence can be made or considered. I think the justice properly excluded the question put to the witness Hynds requesting him to look at a copy of the memorandum he had made, and state the width of the flush boards. The witness had already testified to the width of the flush boards, from the copy memorandum, and even if the question had been originally proper, I see no necessity for its repetition.

I am inclined to think that the decisions of the justice on the trial, as to the mode of proving the damages sustained by the plaintiff by reason of the injury complained of, were correct, but as the jury found a verdict in favor of the defendants, without considering the question of damages, this point is of no consequence.

The charge of the court as originally made, mainly covered the case presented by the evidence. The first request to charge embraced propositions not entirely applicable, which might perhaps have a tendency to mislead the jury from the real and only question involved, viz: the effect of the new dam in raising the height of the water, and thus causing an injury to the plaintiff. When the request was made the judge had already charged that if the defendant had increased the height of the water he was liable for any damages which accrued; and the material or structure used made no difference, so long as the water was not raised. I think the charge covered the whole ground, and hence it was proper to refuse to charge as requested. But if it did not, the subsequent charge did so. The effect and substance of it was to present to the jury the question whether the land and premises had been overflowed at any time, and injuries had been done to the plaintiff by the defendants increasing the height of the dam in making repairs. Unless some damage had been done, the defendants were not liable; and a mere change from a temporary to a permanent structure could make no

difference.  I cannot well conceive how the defendants could by any possibility be made liable when there was no change in the height of the water, and no injury committed.

The defendants could not be made liable for the reason that the plaintiff owned the land on one side of the stream where the dam was erected, unless some injury had been done or some trespass committed by them.  No such proposition was presented, nor was the judge asked to charge in reference to it.  Under no circumstances could the defendants be responsible for making the permanent structure on the dam, unless by means of it the plaintiff was damaged.

I do not think the next exception was well taken, and the judge was right in refusing to charge that the owners of the dam acquired no right by the use of temporary flush boards to retain the water during periods of the year when there was low water, and to substitute for any portion of such flush boards a permanent superstructure.  So long as the height of the dam was not raised by the permanent structure, and was no greater than it was before ; so long as the improvements made by the defendants inflicted no injury upon the plaintiff ; I think they were lawful and proper. Making the structure more firm and the dam tighter, so as to enjoy the full benefit of the privilege at the height it originally was, can furnish no cause of complaint, or create a liability.  This principle was settled in *Cowell* v. *Thayer* (5 *Metcalf*, 253, 259,) which is decisive of this case.  It is held in that case that where a man has by his dam raised a certain head of water, and maintained such dam long enough to raise the presumption of a grant, he may repair his dam, to make it tighter, although the effect may be to keep the water more constantly at an upper level.

Where a prescriptive right has been acquired to a constant mill privilege, by keeping up and using a dam for more than twenty years, Shaw, C. J. says, in the case cited, " If he repairs the dam without so changing it as to raise the water higher than the old dam when *tight and in repair*

would raise it, or uses it in a different mode, and thereby keeps up the water *more constantly* than before, it is not a new use of the stream, for which an adjacent owner can claim damages, *but a use conformably to his prescriptive right.*"

The principle here enunciated was sustained by the general term on the appeal from the decision of the referee. (*See opinion.*)

In view of the whole case, I am of the opinion that there was no error committed on the trial. A new trial must therefore be denied, with costs.

[ALBANY GENERAL TERM, May 5, 1862.　*Hogeboom, Peckham* and *Miller,* Justices.]