## JOHN R. VOTER *vs.* AMOS HOBBS *et als.*

### Franklin. Opinion December 30, 1878.

#### *Mills. Flowage. Dams.*

A mill owner, having a twenty years prescriptive right to flow the land of another, has the right to keep up the water as high as it would be raised by a dam of the same height as the dam which he and those under whom he claims title have kept up and maintained for that period, even though the water is thereby kept more uniformly, and has flowed to a greater height than by the dam before it was repaired; and even though the land is flowed for a longer period of the year.

The claim of the mill owner depends upon, and is limited by the effective height of the dam according to its structure and operation when in repair, and in good order.

Variations in the water, produced by greater or less tightness of the dam, or greater or less economy in the use of the water, or changes or improvements in the machinery and in the wheels used, are not to be taken into account.

ON EXCEPTIONS.

COMPLAINT for flowage.

*S. C. Belcher*, for the plaintiff.

*H. L. Whitcomb*, for the defendants.

APPLETON, C. J. This was a complaint under the statute for the flowage of the plaintiff's land by the defendants' mill dam.

The defendants claimed by their pleading a prescriptive right to flow the land of the plaintiff in the same manner and to the same extent as they were flowed when this complaint was commenced.

The issue to the jury was on the defendants' right by prescription and it was found in their favor.

The court instructed the jury that the defendants "are entitled to keep up the water as high as it would be raised by a dam of the same height as the dam which they and those under whom they claim title had kept up and maintained for a period of twenty years before that time, even though the water was thereby kept more uniformly and flowed to a greater height than by the dam before it was repaired; and even though the complainant's land was flowed for a longer period of the year; that the claim of the mill owners depends upon, and is limited by, the effective height of the dam according to its structure and operation when in repair and in good order; and that variations in the water produced by greater or less tightness of the dam, or greater or less economy in the use of the water, or changes or improvements in the machinery and in the wheels used, are not to be taken into account."

The effective height of the dam is the height which flows. That is what is to govern, and that is precisely what the presiding justice instructed the jury was to govern. The amount of land flowed would depend on the effective height of the dam, and the right to flow would be limited by it.

Dams need repairing. They vary in tightness. The water may be used with more or less economy, at different times, depending upon the exigencies of business. As was remarked by Shaw, C. J., in *Ray* v. *Fletcher*, 12 Cush. 200, "although the water actually raised by it (the dam) may to some extent vary from one season, or one year, to another, owing to the tightness of the dam, the mode of using the water, the different seasons, as being dry or wet, and the like, yet these considerations are too variable and uncertain to be adopted or relied on, as the basis of a right acquired by grant or prescription."

The presiding justice further instructed the jury as follows: "When you come to acquire a right to maintain a dam for the purpose of ponding water to drive mills and the result is you flow somebody's else land, and you keep doing that for twenty years, then what is your right?

"Not the exact right of flowing just as much land as you do

absolutely flow, but just as much as the dam which you use, when in good condition, will flow; so much land as the dam which you maintained twenty years will in effect flow when it is in good condition."

The interrogatory proposed assumes an acquired right to flow by prescription as existing. The prescriptive right having been acquired, the right to flow with a dam of the prescribed effective height necessarily follows. It is not what the dam may absolutely flow at a particular time, but what the dam in good condition ordinarily will flow. The dam is assumed to be in good condition, and being in such condition, the flowage is what must result from such condition—unaffected by the changes of the seasons or the occasional leakage of the dam.

*Exceptions overruled.*

WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.