HORACE C. DANIELS *vs.* CITIZENS' SAVINGS INSTITUTION.

Worcester.   October 1. — 27, 1879.   ENDICOTT & LORD, JJ., absent.

A deed granting a parcel of land on a river, and describing it as containing a certain number of acres, more or less, with the mills, water-power, and all the rights, privileges and appurtenances thereto belonging, passes a right which the grantor had acquired by prescription to keep his dam at a certain height; and such grant is not impaired by a subsequent reference in the deed, "for a full description of the said parcel of land, water-rights and privileges intended to be conveyed," to certain deeds, the last of which was executed thirty-four years before, and all of which contained a restriction as to the height of the dam.

If a person has the right to keep his dam at a certain height, it is no ground of complaint under the mill acts, that, owing to his mill not being used, the water stands higher on the complainant's land than it otherwise would.

MORTON, J.   This is a complaint under the mill acts.   The respondent answered in bar, that it had a prescriptive right to maintain its dam at the height it had been for three years before the institution of the complaint.

The respondent's title was under a deed from one Scott, who derived his title under a deed from one Ray, dated June 13, 1867.   Ray derived his title, by intermediate conveyances, under a deed from John and David Kelly to Daniel Kelly, dated March 12, 1817.   In this deed of John and David Kelly, referring to the pond to be raised by said dam, it is stipulated that "said pond is not to be raised higher than the dam marks on or in a rock lying on Preserved Pickering's land."   Three of the subsequent intermediate conveyances, the latest of which is dated April 2, 1833, contain substantially the same restriction as to the height of the pond.

But, under the instructions given them, the jury must have found, as a fact, that, at the time Ray conveyed to Scott, Ray and those under whom he claimed had previously acquired a prescriptive right to maintain the dam at its present height, even if it raised the pond "higher than the dam marks on the rock" on Pickering's land.

1. The first question presented in this case is, whether the deed from Ray conveyed to Scott the prescriptive right thus acquired.   We are of opinion that it did.   The deed grants and conveys "unto the said John C. Scott a certain tract of land situ-

ated in the northerly part of Blackstone aforesaid, on Mill River, so called, containing three and one fourth acres, more or less, with the mills, dwelling-houses, barns and other buildings thereon, with water-power, and all the rights, privileges and appurtenances thereto belonging, formerly owned by Seth and Eli Kelly. Also all the fixtures, tools, and machinery used in operating said mill. For a full description of the said parcel of land and water-rights and privileges intended to be conveyed, reference is made to the following-named deeds, to wit," then naming the four deeds which restrict the right to flow to the height of the "dam mark" on the rock on Pickering's land.

It is too clear to admit of doubt, that the first or granting clause above quoted would convey to Scott all the water-rights and privileges which Ray had, whether acquired by deed or by prescription. And we are of opinion that such grant is not impaired or cut down by the subsequent reference to the ancient deeds under which Ray acquired his record title to the premises.

A prior grant will not be restricted by a subsequent reference to other deeds, unless the language used, construed in connection with the surrounding circumstances, clearly shows that the intention of the parties was that the reference should operate as a restriction of the grant. The test is, what was the intention of the parties. In this case the deed describes the land conveyed merely as a tract of land containing three and one fourth acres; and a reference to former deeds was natural, for the purpose of ascertaining the boundaries of the land. The grant of the "water-power, and all the rights, privileges and appurtenances thereto belonging," clearly imports and includes the right to maintain the dam as it was, at the same height as that at which the grantor had a right to maintain it. In other words, it imports a conveyance of all the water-power and privilege which the grantor owned. There is a strong presumption that the grantor did not intend to convey less than his whole right. Such an intention could be founded only upon a purpose on his part to abandon a part of his right, or to retain in himself an interest which, if it could be retained, would be barren and valueless, neither of which purposes is fairly to be presumed. We are of opinion that it was the intention of Ray to convey all the

water-power which he owned; and, therefore, that the ruling of the Superior Court upon this question was correct. *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15. *Hastings* v. *Hastings*, 110 Mass. 280. *Auburn Congregational Church* v. *Walker*, 124 Mass. 69.

2. It appeared at the trial that the mill on the premises was destroyed by fire in 1874. The complainant contended that, by reason of the ceasing to draw water to operate the mill after the fire, the dam had caused the water to flow higher, or to stand more constantly on his land; and asked the court to rule that he was entitled to recover any damage occasioned thereby, although the actual height of the dam had remained the same.

The court properly refused this instruction. The rule laid down in *Ray* v. *Fletcher*, 12 Cush. 200, applies to and governs this case. The efficient height of the dam, when in good order and repair, to hold back water, is the measure of the right of the party owning it. The height of the water raised by it is likely to vary from time to time, owing to the state of repair of the dam, the extent of the use of the water for running the mill. the amount of water running in the stream, and other causes. The height of the pond will ordinarily be variable and fluctuating, and can afford no safe rule to measure the rights of the parties. The efficient height of the dam is the only rule which can be practically administered without embarrassment, and we think that rule regulates the right of an owner of a dam who claims by prescription. In the case at bar, therefore, the fact, if it can be proved, that the height of the water above the dam is slightly raised by the temporary disuse of the water, consequent on the burning of the mill, would not entitle the complainant to a warrant for a jury. *Exceptions overruled.*

*T. G. Kent*, for the complainant.

*C. G. Keyes*, for the respondent.