Filed April 24, 1886.

---

No. 11,319.

## LAMMOTT v. EWERS.

WATERCOURSE. — *Grant of Water Rights.—Dam. — Easement.* — Where one while owning an entire estate conveys a part, upon which is a mill, "together with the dam across the river and all the water rights and privileges thereunto belonging or appertaining," subsequent purchasers of the servient estate, and their grantees, take it subject to the right of the grantee of the mill property, and those claiming through him, to maintain such a dam as will raise the water to the same effective height to which it was usually and ordinarily raised before the grant.

SAME.— *Use of Flash-Boards by Grantor.—To What Height Grantee may Maintain Dam.*—Where the owner of an entire estate, prior to the grant of mill property and water rights, uses flash-boards on the dam whenever they are deemed necessary to provide an efficient head of water at a certain height, it becomes a right appurtenant to such property, and the grantee thereof, and those claiming through him, may, as against the grantor or those claiming the servient estate through him, maintain such head at the same height by a permanent dam or other efficient means, no injury being done.

SAME.—*Extension Over New Channel.*—Where, in such case, an artificial channel has been washed out around one end of the dam, the latter may be extended over and across it, if the extension tends to the better security of the dam, and does no injury.

From the Wayne Circuit Court.

*H. C. Fox* and *J. H. Kibbey*, for appellant.
*C. H. Burchenal* and *J. L. Rupe*, for appellee.

MITCHELL, J.—This action was brought by Lammott against Ewers to compel the partial abatement of a mill dam, erected by the latter across White Water river, in Wayne county. A further object of the suit was to enjoin the defendant from making a proposed extension of the dam eastwardly, across an artificial channel which had been washed around the east abutment. In addition damages were claimed for flowing the plaintiff's lands by means of the dam erected by the defendant, and for causing the artificial channel above mentioned to be washed through his soil.

The defendant sought to justify under a grant of certain water privileges, contained in a deed from a remote grantor, through whom both the plaintiff and defendant claimed title to the respective properties which were the subjects of litigation.

It was conceded that on and prior to the year 1847, one Jacob Sinks owned all the land involved, as well that now owned by the plaintiff as that upon which the dam and mill belonging to the defendant are situate. While so owning the lands he built a mill upon the site now occupied by the defendant's mill, and raised a dam near the place where the defendant afterwards erected the structure which occasioned the present dispute. Subsequently Sinks conveyed the mill and dam erected by him, together with the lands now owned by the plaintiff, to Levin Warren.

In 1865, while owning the whole, Warren conveyed by deed of general warranty to one Petty, an irregularly shaped tract of land, described by metes and bounds, containing four acres and a fraction. With the land there was also granted such further rights as are embraced in the following stipulation written in the deed, viz.: "Together with the dam across the river, and all the water rights and privileges thereunto belonging or appertaining, and the race supplying said mill

with water from said dam, with the privilege of entering upon the land along said race for repairing the same and obtaining soil and gravel at the most convenient place along and in the river for repairing said dam."

The plaintiff derived his title to the lands alleged to have been injured, by mesne conveyances subsequently made from Warren.

The theory of the defendant below was, that as Sinks, while the owner of the whole estate, had built a mill, and erected and maintained a dam, in a manner to create and afford certain water privileges, and that as Warren had acquired the whole estate, and had continued to maintain a dam, and use the water rights and privileges thus created and enjoyed by Sinks, in the manner hereinafter described, for a long period of time, prior to the conveyance to Petty, the grant of the dam and water rights and privileges contained in that deed subjected the remaining lands owned by Warren, and since acquired by the plaintiff, to a continuing burden, the extent and measure of which was limited only by the extent of the previous use.

On the other hand, the plaintiff's claim was that the basis of the defendant's right rested upon prescription or adverse user, and that the extent of his right was to maintain the dam in the physical condition it was actually and visibly in at the time the conveyance was made from Warren to Petty, or, at most, that the right granted was to enjoy the privilege in precisely the same manner that it had previously been used. In short, that the words, " together with the dam across the river, and all the water rights and privileges thereunto belonging and appertaining," operated only to convey the dam as it existed when the deed was made.

At the trial the evidence was mainly directed to two points: 1. The height and extent of the dam, and the manner in which it set the water back, at and prior to the conveyance from Warren to Petty, in 1865. 2. The height at which the m had been maintained, its location and extent, and the

manner in which it affected the stream above from the time it was first built until the commencement of the suit.

The cause was tried as a chancery case, a jury having been called, by agreement, to find certain facts, in answer to interrogatories to be prepared and submitted to them by the court, upon which findings of the jury, with such others as the court should deem it proper to make, it was agreed, judgment should be rendered according to law.

The facts specially found by the jury and those which were undisputed were: That the lands were owned by the parties, and their respective rights had been acquired, substantially as hereinbefore stated; that Sinks and Warren successively for a period of twenty-four years, prior to the conveyance by Warren to Petty, maintained a dam across White Water river, at or about the point occupied by the defendant's dam. The height of the dam proper, as usually and ordinarily maintained prior to 1865, was four feet and ten inches. In addition to a permanent frame dam of the height above mentioned, flash-boards eight inches in height were maintained on the top of the structure whenever it was desirable to do so. These were held in place by means of strong iron staples which were driven into the breast of the dam and into which standards were adjusted for the support of the flash-boards. They were put on and readjusted whenever needed to supply a full head of water, and were maintained in place, except as they were carried away by drift and floods. Such as were so carried off were replaced when the water subsided, so as to require their restoration in order to supply the required head of water. The dam proper, with the flash-boards thus mentioned, was five feet six inches in height. In 1881, having previously acquired the mill and appurtenances, and the old structure having been partially carried out, the defendant rebuilt the dam permanently, to the height of five feet and six inches. The new structure raised the water at the dam and in the stream which flowed through plaintiff's land, eight inches higher than it was accustomed to stand as the dam

was usually and ordinarily maintained by Warren. During floods, or periods of high water, the new dam caused a greater overflow of plaintiff's land than the old one did. At all ordinary stages of the river, the new structure caused no greater injury to, or flow of water, upon the plaintiff's land, than was caused by the old one. Since the dam was reconstructed, during a prevailing freshet a new channel was cut through plaintiff's land at the east end of a levee which has been maintained from the first, at a height corresponding with the height of the dam. This was caused by the new structure having been raised to a greater permanent height than the old dam formerly was. The damage resulting to the plaintiff's land by the cutting of this new channel was found to be $25. It is expressly found that in all other respects, the erection of the new dam has occasioned the plaintiff no other or different damage than he would have sustained if the dam had been maintained as it was prior to the conveyance from Warren to Petty. It is further found that the dam can not be extended across the new channel at any other place than that proposed by the defendant, with greater security to the defendant, or less damage to the plaintiff, and that the proposed extension will not cause any more damage to plaintiff's land than if the dam and levee should be constructed in the precise manner in which they were maintained prior to 1865.

Upon the facts thus found by the jury, which, with the facts admitted or not seriously in dispute, were substantially all the facts material in the case, judgment was rendered in favor of the plaintiff for $25 for his damages. With respect to the abatement of the dam prayed for, and in regard to preventing the extension proposed, the judgment was for the defendant.

The only question presented by the errors assigned is, taking the undisputed facts as true, and assuming that the evidence tends to support the facts as found by the jury, was the judgment of the court below according to the law of the

case? This will depend upon the effect attributable to the deed from Warren to Petty, both as respects the lands with the water rights and privileges therein granted, as also the lands with the easements and burdens thereon imposed, which were retained by the grantor. Whatever rights Petty might have asserted against Warren, after the deed was made, the defendant may now assert against the plaintiff, a remote grantee of Warren. This result flows from the fact that Warren, the common grantor, while owning the whole estate, subjected that to which the appellant has succeeded, to a burden in favor of that which by a prior conveyance has come to the appellee.

Since the grant of a right carries with it of necessity all the incidents and privileges connected with the right granted, which are necessary to its enjoyment, the grantees of Warren, near and remote, acquired as against him, and all who stand in his place, the right to maintain a dam of the efficient height to hold back water, so as to produce a head or power equal to that which was rightfully appurtenant to the mill at the time of the conveyance referred to. It is of no consequence whether the head customarily maintained was by one method or the other. The right granted was the efficient head or water power which had become appurtenant to the mill. The grant related to the thing, and not to the means by which it was produced.

The doctrine is too familiar to justify elaboration, that when the owner of an estate, during such ownership, has by artificial arrangements made one part subservient to the other, thus enhancing the value of one by burdening the other, the conveyance of that, the value of which is thus enhanced, will carry the right to an easement in the other, to the extent necessary to the enjoyment of that granted, in the same condition in which it was enjoyed before. *John Hancock Mut. L. Ins. Co.* v. *Patterson*, 103 Ind. 582 (53 Am. R. 550). Petty's grantor had, by the previous use, imposed a burden on one part of his estate in favor of the other. The right to

continue this burden was one which he had the power to grant. It passed with his grant of the mill and the water rights appurtenant to it. *Green* v. *Collins*, 86 N. Y. 246 (40 Am. R. 531).

As applicable to water rights, in a case where such rights are granted without being otherwise specifically defined, since they are in a measure at least incorporeal and invisible, they are measured and limited as against the grantor, by the extent to which they were designed to be used, and had actually been made available for and applied to use.

The height at which the superstructure forming the dam had been, or might thereafter be, raised, not having been specified in the deed, there were at least two practical tests by which to ascertain the extent of the undefined water right granted in the deed. One was the height at which the water had been usually and ordinarily maintained at the breast of the dam, without regard to means employed in raising it. The other was the distance the water was set back during the ordinary stages of the stream.

It may be admitted that there was some conflict in the testimony concerning the purpose for which the flash-boards were applied, but there was evidence fairly tending to prove that they were part of the dam as originally constructed, and that they were necessary, except during periods of high water, in order to raise the water so as to afford the proper head.

It is in the light of this evidence that the facts found must be considered. That some of the flash-boards were carried off during freshets, and that they were not restored until the water subsided, so as to render their restoration necessary in order to afford the proper head, does not affect the question. That the former owners, exercising their pleasure as to means, chose to maintain the efficient head of water, by the use of flash-boards, did not affect the right of their grantees to maintain the same head by a method more stable and permanent.

The effective height of the dam is that which governs. The grantees of Warren acquired the right by grant to maintain

a permanent dam which would raise the water to the same ef-
fective height to which it was usually and ordinarily raised
before the conveyance was made.

This right, it must be remembered, was not predicated on
prescription; it was acquired by express grant. The extent
of the use prior to the grant was only referred to in order to
ascertain the extent of the right granted. Whether, if the
right had depended upon prescription, the use of the flash-
boards, as shown, was so continuous or of such a character
as to have raised the presumption of a grant, we need not
determine. What we decide is, the owners of the estate prior
to the grant to Petty, having exercised the right at their
pleasure to keep flash-boards on top of the dam whenever
they deemed it necessary to provide an efficient head of water
at a certain height, made it a right appurtenant to the mill
property to maintain such head at the same height by any
other efficient means. The deed to Petty granted that right
as appurtenant to the mill, and imposed the consequences as
a burden upon the property owned by the plaintiff. The fol-
lowing, among other authorities, bear upon, and have some
analogy to, the case under consideration : *Cowell* v. *Thayer*,
5 Met. 253; *Ray* v. *Fletcher*, 12 Cush. 200; *Daniels* v. *Cit-
izens' Savings Institution*, 127 Mass. 534; *Voter* v. *Hobbs*, 69
Maine 19; *Lacy* v. *Arnett*, 33 Pa. St. 169; *Hynds* v. *Shults*,
39 Barb. 600; *Marely* v. *Shults*, 29 N. Y. 346; Angell Water-
courses, section 380.

The learned author above cited summarizes the result of
the authorities, as applied to rights acquired by prescription,
in the following language: "Where the owners of a dam
have for a period of twenty years made use of flash-boards
on their dam for the purpose of retaining the water during
periods of the year when it was low, they may acquire
a right to substitute for any portion of such flash-boards a
permanent structure, so long as the height of the dam is not
raised thereby and no injury is done."

As against the grantor of a water right, a rule not less favorable to the grantee than that above stated should obtain.

The findings show that the permanent structure raised by the defendant is of a height corresponding with the old dam when the flash-boards were adjusted to it. Unless this raised the water in the stream to such an extent beyond its former height, as to set it back upon and affect the plaintiff's land injuriously, it was within the terms of the grant.

It is true the jury find that the new dam raises the water eight inches higher in the stream than the old one did, as it was usually and ordinarily maintained. But they also find that in all ordinary stages of the river the water is not thrown upon the plaintiff's land in a manner to injure it more than formerly.

As already observed, the efficient height of the dam, when in an effective condition to hold back the water to the height at which the former proprietors at their pleasure held it back, is the measure of the defendant's right.

This can not be determined absolutely by observing the varying and fluctuating conditions of the stream during momentary freshets. Especially is this so, when the actual height of the several structures as ascertained are found to correspond, and when it is found that in the ordinary stages of the river no material difference in its height is discoverable.

An obvious reason exists for the fact that since the top of the dam has been so constructed as not to yield to the pressure of drift and flood, the water is, during certain periods, thrown upon the plaintiff's land to a greater extent. The fact that the dam is made permanent, however, does not affect the right, as the right can be exercised without injury to the plaintiff.

The right to make the extension of the dam, necessary to close up in a permanent manner the artificial channel, results from the terms of the grant. We do not stop to go into details. It is sufficient to say, the jury having found that the extension proposed tends to the better security of the dam,

without injury to, or invasion of, the property of the plaintiff, no reason is perceived why it may not be extended.

Upon the whole case we think a right result was reached, within the rules of law.

The judgment is affirmed, with costs.

Filed May 11, 1886.