STADLER et al. v. MISSOURI RIVER POWER CO.

(Circuit Court, D. Montana. November 21, 1904.)

No. 674.

1. CONTRACTS—CONSTRUCTION—INSTRUMENTS EXECUTED AT SAME TIME.

Different instruments executed between the same parties on or about the same date, relating to the same subject-matter, are to be construed together as a single contract, and as considerations one for the other.

2. EASEMENT—CONSTRUCTION OF GRANT—INCIDENTAL RIGHTS.

Defendant owned and maintained a dam on the Missouri river for the generating of electrical power, and plaintiffs owned land above it. As the result of negotiations between the parties following condemnation proceedings, defendant purchased and took a conveyance from plaintiffs of some 600 acres of land, and also at the same time made a lease of such land to plaintiffs for a term of 20 years at an annual rental of $1, reserving the right to flood the land at any time; the lease to terminate, should the dam be washed away. The lease also contained a provision

¶ 1. See Contracts, vol. 11, Cent. Dig. § 746.

that plaintiffs, on behalf of themselves, their heirs, etc., "hereby agree to permit and recognize the right of said first party to flood said premises by the waters of the Missouri River as they may be raised by the dam belonging to the said first party * * * as the said dam now exists or as the same may be hereafter raised or lowered, without claim for damage." *Held*, that in view of the entire transaction, the evident purpose of which on the part of defendant was to acquire the right to raise its dam without liability for damages, such covenant must be construed as a grant of such right, and as a release of any claim for damages resulting from its exercise to other lands owned by plaintiffs in the vicinity, which would incidentally be flooded by the flooding of those described.

## In Equity. Suit for injunction.

The complainants brought this action against the defendant corporation, which is a citizen and a resident of the state of New Jersey, praying for an injunction to restrain the defendant from keeping or maintaining a dam across the Missouri river at any greater height than it was on August 1, 1902, or from erecting or maintaining any structures or works whereby the waters of the Missouri river are raised or kept back or prevented from flowing over the uppermost surface of the defendant's dam, as the same existed on August 1, 1902, and for general relief. Complainants allege that prior to the year 1902 the defendant company construc+ed a dam of masonry across the Missouri river at Canyon Ferry, Mont.—the dam being of the height of about 32 feet —by means of which dam, and the water stored above the same, the defendant generated electrical power, which it transmitted and sold in and about the cities of Helena and Butte, in Montana; that the defendant corporation was organized for the purpose, among others, of constructing said dam to carry on the business of generating and selling electrical power, and that it has been engaged in such business for more than three years prior to the date of the institution of the suit, to wit, April 14, 1903, and that it was still engaged in such business; that complainants, since January, 1899, have been owners of certain lands in Broadwater county, Mont., bordering on and adjacent to the Missouri river, above the place where the defendant's dam was constructed and maintained, a more particular description of said lands being as follows: Lot 12 in section 6; lot 9 in section 6; lot 14 in section 5; the N. ½ of the N. W. ¼ of section 8; lots 3 and 4 in section 8; lot 11 in section 6; and lots 1, 10, and 11 in section 8—all in township 9 N., of range 1 E., comprising in all 289.49 acres. Complainants further allege that they have been copartners as cattlemen, and that the lands mentioned have been used by them in connection with their cattle business, and that said lands are very well adapted for feeding, grazing, and attending to cattle, and that they cultivated large portions of the lands in hay, and had built thereon a dwelling house, sheds, stables, and other buildings in which to feed and keep various classes of stock; that the lands had living springs of fresh water upon them, and that these springs remained open at all seasons of the year, and were accessible to the cattle; and that on the lands there was an extensive growth of willows, which furnished shelter to which the cattle resorted during storms. It is also alleged that at divers times since August 1, 1902, the defendant corporation has raised and caused to be raised its said dam across the Missouri river by means of works constructed on top of its said dam as it has theretofore existed, all of which was done without notice to complainants; that in consequence of the construction of said works by the defendant since August 1, 1902, the waters of the Missouri river have been backed up so that they have flooded and submerged the lands of the comp'nin-ants as described, and obliterated the springs referred to, rendered unavailable the shelter of the willows, and the sheds, stables, granary, and corrals, and rendered all of the lands hereinbefore described, so submerged, valueless while they so remained submerged. Complainants aver further that defendant intends to continue to maintain its dam at the present height, with a superstructure, and that it intends to replace the structures now erected on its masonry dam, which are of a temporary character, with more permanent works, by means of which the said dam will be permanently raised to a height at least 10 feet above that which it was prior to August 1, 1902. Complain-

ants further allege that the lands are so situated that if the said dam is raised to any height greater than it was prior to August 1, 1902, more or less of the said lands will be submerged by the waters of the Missouri river, and that the defendant threatens to continue to perpetrate the wrongs complained of, and to continue to flood the lands as described, thereby inflicting great and irreparable injury to the said lands.

The defendant corporation admits the construction of a dam prior to August 1, 1902, to a height of about 32 feet; admits that it stored the waters, and has generated electrical power, which it transmitted for sale in and about the cities of Butte and Helena; admits the alleged ownership of lands by the complainants, except that it denies that complainants own lot 11, section 7, mentioned in complainants' bill; admits the use of lands by the complainants, and the erection by complainants of a dwelling house, sheds, stables, and other buildings upon the lands, but denies the existence of numerous living springs of fresh water upon the lands, from which the cattle drink, and alleges that any springs which may be upon the property are inaccessible during the winter. The corporation admits that at divers times since August 1, 1902, it has raised and cause to be raised its said dam across the Missouri river, but denies that it was done without notice to complainants; denies that, in consequence of the construction of the said works, since August 1, 1902, the waters of the Missouri river have been backed up so as to flood and submerge all or nearly all of the lands of the said complainants, or obliterate the springs, or render unavailable for shelter any willow trees, or sheds or other buildings mentioned in the complainants' bill, or rendered any of the lands valueless by reason thereof. Defendant then admits that it intends to continue to maintain its dam at its present height, with a superstructure erected as it existed prior to the 1st day of August, 1902, but denies it intends to replace the structures now located on its masonry dam with works of masonry or permanent works, by means of which said dam shall be permanently raised to a height of 10 feet above that which it was prior to August 1, 1902; denies that complainants' lands are so situated that if the said dam is raised to any height greater than that which it had prior to August 1, 1902, more or less of the said lands will be submerged; and denies that it threatens to continue to perpetrate any wrong, or, except as hereinafter stated, to flood at all any of the lands belonging to the complainants; and alleges that it never has flooded and will not flood any of the said lands, except as it has acquired the right to flood the same. Defendant then avers that, at the time of the alleged trespass and wrongs complained of, it was, and is now, the successor in interest of the Helena Water & Electric Power Company, a Montana corporation, and, as such successor, is entitled to have, possess, and enjoy, and is the owner of, all the rights, privileges, easements, property, and servitudes of the said Helena Water & Electric Power Company in the state of Montana. It is alleged that the said Helena Water & Electric Power Company was duly authorized to construct a dam across the Missouri river in Montana for the purpose of producing and generating power for mining, mechanical, and other useful and beneficial purposes, and had at said dates built and constructed a dam therefor, and was entitled to possess, hold, and enjoy all real estate necessary and convenient in connection therewith, and to sell and convey the same, including and embracing the rights, property easements, and servitudes hereinafter set forth; that the said Helena Water & Electric Power Company, having in contemplation the raising and extending its said dam, and for the purpose of securing the right so to do, made and entered into a certain tripartite agreement with the said complainants, copies of which are annexed to and made part of the defendant's answer; and that the exhibits constituting said tripartite agreement comprise a part of one and the same transaction, and, as a whole, constitute a contract and agreement of the parties concerning the alleged damage, trespass, and wrongs complained of; and that, when the contract and agreement referred to were made, the defendant alleges that the complainants were the owners and possessors of the premises therein described, and were at that time owners of and possessors of other property described in their complaint, with full power to create rights, easements, and servitudes therein. The defendant avers that in consideration of the sum of $22,487.55 paid to the complainants by the said Helena Water & Electric

Power Company, and as the chief and only objects thereof, it was stipulated and agreed by the said tripartite agreement that the defendant should have and secure the right to raise said dam to a sufficient height to flood and submerge the lands therein described, and that, as incident and necessary to the enjoyment of said grant to the extent aforesaid, there is involved the alleged trespass and damage complained of; that, in consideration of the said sum of $22,487.55 so paid for the right of raising said dam and backing up said water, said complainants by said tripartite agreement released and discharged the said Helena Water & Electric Power Company, its successors and assigns, from any and all damages complainants might sustain on account thereof; that said dam has not been raised to the height so contemplated, nor have said lands been submerged, except as the right to do so was acquired according to said contract and agreement; that defendant has never yet raised the waters of its dam to a height to flood all of the premises mentioned in said tripartite agreement; that, incidental to the rights and grant aforesaid, and so contemplated as aforesaid, the alleged trespass and damages necessarily arise; and that the claim now made by complainants would entirely defeat and destroy the said grant, and the benefit thereof, notwithstanding the vauable and large consideration paid therefor.

For further answer the defendant alleges that the Helena Water & Electric Power Company was authorized by its charter to purchase, hold, develop, improve, use, sell, and convey water power and sites therefor; to construct dams and reservoirs and to use the waters, as well as to sell them for public and private use; to sell water and water power; to use the same for mechanical and other useful purposes, including electrical power, and to establish telegraph and telephone lines, and to use such power in connection therewith; and also to use such electric power directly, as well as for the purpose of transmitting and conveying and using and selling the same for use in mines, smelters, concentrators, and other useful purposes; that the said Helena Water & Electric Power Company instituted a suit in the district court of the First Judicial District of the state of Montana, in and for the county of Lewis and Clarke, in December, 1897, against several parties, including these complainants, to have said court determine and ascertain the interests of the several parties in said lands and premises sought to be condemned by said Helena Water & Electric Power Company in said action, and asking that the use for which said plaintiffs in said action sought to appropriate the premises might be determined to be a public use under the laws of the state of Montana, and that the said premises were necessary and required for said public use, and prayed the appointment of three persons as commissioners to determine and ascertain the amount to be paid by the plaintiffs in said action to each of the defendants in said action as damages of their premises by the plaintiff; that, when commissioners reported, an order might be made that the said Helena Water & Electric Power Company, upon paying into court the damage as ascertained and determined by the said commissioners, should be allowed to enter into the possession of the premises in its said complaint described, and to use and possess the same during the pendency and until the final conclusion of the proceedings; that thereafter, on December 26, 1897, all of the parties in said action having appeared, and it appearing to the court that the matters and facts set forth in the complaint were true, the court ordered and determined that the use for which the said Helena Water & Electric Power Company sought to appropriate said premises was a public use, under the laws of the state, and appointed commissioners to examine the lands sought to be condemned, and ascertain and determine the amount to be paid by the plaintiff therein to each of the defendants, respectively, as damages; that thereafter, on January 3, 1898, the commissioners entered upon the discharge of their duties and reported to the court that they heard testimony and examined the property, and found the value of the lands of these complainants to be the sum of $8,346.50; that Stadler and Kaufman appealed from the award relating to the property of Stadler and his wife and Kaufman, and that thereafter, on June 18, 1898, the appeal came on to be heard before the judge of the District Court of the First Judicial District of the state of Montana, and a jury of 12, and that, upon the trial of the appeal from the commissioners' report, it was an issue to determine the damage that

would be occasioned to said Stadler and wife and Kaufman by reason of the construction, erection, and maintenance of said dam by the said Helena Water & Electric Power Company and its successors in interest, and the damage that would be occasioned to said premises and the improvements thereon, as described in the complaint of the Helena Water & Electric Power Company, as belonging to the said Stadler and his wife and Kaufman, and particularly described as follows, to wit: The east half of the southwest quarter, the south half of the southeast quarter, and the northwest quarter of the southeast quarter, and lots 10, 11, and 13 of section 31, township 10 north, range 1 east; also lots No. 4 of section 32, township 10 north, range 1 east and lots 3, 4, and 19 of section 6, township 9 north, range 1 east; that the property just above described and so sought to be secured constituted only a portion of a larger parcel of land then belonging to complainants herein, the remainder of said parcel being described as follows, and belonging to complainants: Lots 4, 5, 6, and 7 of the southeast quarter of the northeast quarter of section 5, township 10 north, range 1 east; also lots 5, 7, 8, 9, 10, 11, and 12 of section 6, township 10 north, range 1 east; also the northeast quarter of section 7, township 10 north, range 1 east; also the southeast quarter of the southwest quarter and lot 13 in section 6, township 10 north, range 1 east; and it is alleged that it became and was an issue in said cause upon the trial of the appeal from the commissioners' report to determine the damage which would accrue to the said last described land and the improvements thereon by reason of its severance from the portion so sought to be condemned, and by reason of the construction and maintenance of the said dam by said Helena Water & Electric Power Company and its successors. Defendant alleges that included in the issues tried on the appeal was the question of damage, by reason of the construction and maintenance of a dam, to the land, and the business and the uses of the lands for stock growing, and as to the amount of damage that would result to the complainants by reason of the backing up of the waters of the Missouri river occasioned by the construction and maintenance of the dam by reason of the ownership of said lands, and the improvements thereon, described in the complaint of the Helena Water & Electric Power Company, and sought to be condemned, by reason of the adaptability of said lands and improvements to the purposes of stock raising, and by reason of the damage occasioned to said lands and to said complainants, and by reason of the obliteration, destruction, and availability to certain springs mentioned in complainants' complaint, and on account of the flowage of water upon said lands. It is alleged that thereafter, on June 27, 1898, the jury in the appeal case made special findings, and on June 29th the court entered judgment to the effect that the Helena Water & Electric Power Company should pay to the complainants herein the sum of $8,309.10, with interest, and that upon said payment plaintiff and its successors should have the right to construct and maintain the improvements, and to take, use, and appropriate the property hereinabove described for the uses and purposes for which the land has been condemned. It is alleged that thereafter the money was paid to the complainants herein, and that the judgment is in full force and effect now, as between the parties hereto, and that the defendant is the successor in interest of the said Helena Water & Electric Power Company in respect to the matters and things adjudicated in said action, and that they are the same matters and issues involved in this suit between the complainants and the defendant. It is then alleged that on the 17th of January, 1899, the said Kaufman and Stadler and wife, for a valuable consideration, executed and delivered to the Helena Water & Electric Power Company their certain deed of release, which is made a part of the defendant's answer, and that in said deed of release certain land is described as "also the land on the island in the Missouri River, near said above-mentioned property," which said land, as thus described, defendant alleges, embraces the identical land described in complainants' complaint as lot 14 in section 5 north, half of northwest quarter of section 8, lot 3 in section 8, and lot 4 in section 8, all in township 9 north, range 1 E. Defendant then avers that it has not raised or caused to be raised the waters of the Missouri river by its dam, or at all, to such height as to flood all of the premises mentioned in said deed of release, and will not do so.

Exhibits A, B, and C are as follows:

## Exhibit A.

"This Indenture, Made this seventeenth day of January, A. D. one thousand eight hundred and ninety-nine, between Louis Stadler, and Mary Stadler, his wife, and Louis Kaufman of the City of Helena, County of Lewis and Clarke, State of Montana, parties of the first part, and Helena Water and Electric Power Company, a corporation, organized under the laws of the State of Montana, the party of the second part, Witnesseth; That the said parties of the first part for and in consideration of the sum of Twenty-two thousand four hundred and eighty-seven and $^{55}/_{100}$ Dollars ($22,487.55) lawful money of the United States of America to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do by these presents, grant, bargain, sell, convey, warrant and confirm unto the said party of the second part, and to its successors and assigns, forever, the hereinafter described real estate, situated in the County of Lewis and Clarke, and State of Montana, to wit: The East one-half of the Southwest Quarter (E. ½ of S. W. ¼), South half of the Southeast quarter (S. ½ of S. E. ¼), Northwest quarter of the Southeast Quarter (N. W. ¼ of S. E. ¼), and lots numbered ten (10), eleven (11) and thirteen (13), all in section thirty-one (31), Township ten (10) North, of Range one (1) East. Also lots numbered three (3), four (4) and nineteen (19), in Section six (6), Township nine (9) North of Range one (1) East. Also lot numbered four (4) in Section Thirty-two (32), Township ten (10) North, of Range one (1) East; and lots numbered four (4), five (5), six (6) and seven (7), and the southwest quarter of the northwest quarter (S. W. ¼ of N. W. ¼) in Section five (5), Township nine North of Range one (1) East. Also Lots numbered five (5), seven (7), eight (8) and ten (10), in Section Six (6), Township nine (9) North of Range one (1) East of the principal Meridian of Montana, in all amounting to (637.42) six hundred thirty-seven and $^{42}/_{100}$ acres. Together with all and singular the hereinbefore described premises, together with all the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof; and also the estate, right, title, interest, right of dower and right of homestead, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in or to the said premises, and every part and parcel thereof, with the appurtenances thereto belonging. To have and to hold all and singular the above mentioned and described premises unto the said party of the second part, and to its successors and assigns forever. And the said parties of the first part, and their heirs do hereby covenant that they will forever warrant, and defend all right, title and interest in and to the said premises and the quiet and peaceable possession thereof, unto the said party of the second part, its successors and assigns, against the acts and deeds of the said parties of the first part, and all and every person or persons whomsoever, lawfully claiming or to claim the same.

"In Witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first hereinabove written.

|  |  |
|---|---|
| "Louis Stadler. | [Seal.] |
| "Mary Stadler. | [Seal.] |
| "Louis Kaufman. | [Seal.] |

"Signed, sealed and delivered in the presence of Thos. C. Bach, witness for all.

"[United States Revenue Stamps.]"

## Exhibit B.

"This indenture, made the seventeenth day of January, 1899, between the Helena Water and Electric Power Company, a corporation, by C. W. Whitley, its general manager thereto duly authorized, party of the first part, and Louis Stadler and Louis Kaufman of Lewis and Clarke County, Montana, parties of the second part, witnesseth:

"That in consideration of the rents hereinafter reserved and the covenants hereinafter contained on the part of the said Louis Stadler and Louis Kaufman, their executors, administrators and assigns, to be observed and per-

formed, the said Helena Water and Electric Power Company does hereby let and rent unto the said parties of the second part for the term of twenty years, except as hereinafter stated and limited, the following described premises: The east one-half of the Southwest Quarter (E. ½ of S. W. ¼), South half of the Southeast Quarter (S. ½ of S. E. ¼), Northwest Quarter of the Southeast Quarter (N. W. ¼ of the S. E. ¼), and lots numbered ten (10), eleven (11), and thirteen (13), all in Section Thirty-one (31), Township ten (10) North, of Range one (1) East; also lots numbered three (3), four (4) and nineteen (19) in Section six (6), Township nine (9) North of Range one (1) east. Also lots numbered four (4) in section thirty-two (32), Township ten (10), North of Range one (1) east; and lots numbered four (4), five (5), six (6) and seven (7), and the southwest quarter of the northwest quarter (S. W. ¼ of N. W. ¼) in section five (5), Township nine (9) North, of Range one (1) East; also lots numbered five (5), seven (7), eight (8) and ten (10) in section six (6), township nine (9) North of Range one (1) East of the Principal Meridian of Montana; also such other land as the party of the first part now owns on the island in the Missouri River near the above-mentioned property, reserving, however, to the said party of the first part, its successors and assigns, the right at all times hereinafter to flood any or all of the said premises by the waters of the Missouri River as the same may be raised by the dam belonging to the said first party, at Canyon Ferry, Lewis and Clarke County, Montana, as the same now is or the same may be hereafter raised or lowered, and this lease is given subject to this right.

"In consideration whereof the said parties of the second part agree to pay unto the said first party, the yearly rent of one dollar for the use of said premises, payable on the 17th day of January, 1900, and every year thereafter during the continuance of this lease. The said second parties for themselves, and each of themselves, their and each of their heirs, executors and assigns, do hereby agree to permit and recognize the right of said first party to flood said premises by the waters of the Missouri River as they may be raised by the dam belonging to the said first party at said Canyon Ferry, Montana, as the said dam now exists or as the same may be hereafter raised or lowered, without claim for damage. It is hereby mutually agreed and understood that if at any time hereafter the dam of the said party of the first part at said Canyon Ferry as it now exists or as it may hereafter be altered or changed shall be washed away so that it does not afford sufficient power to the said first party, that this lease shall then and there terminate.

"In witness whereof the said parties hereto have hereunto set their hands and seals the day and year first above written.

"Helena Water and Electric Power Company,
"By C. W. Whitley, General Manager.

"Louis Stadler. [Seal.]
"Louise E. Kaufman. [Seal.]
"In presence of Thos. C. Bach, Witness for all.
"[U. S. Revenue Stamps.]"

### Exhibit C.

"Know all Men by These Presents, that we, Louis Stadler and Mary Stadler, his wife, and Louis Kaufman, for and in consideration of the sum of one dollar, and other valuable considerations to us in hand paid, by the Helena Water and Electric Power Company, a corporation, have forever released and discharged and do hereby forever release and discharge the said Helena Water and Electric Power Company, its successors and assigns, from all damages or claim for damages which we have or claim to have, or may hereafter claim, against it by reason of it (said company) having flooded or hereafter flooding by the waters of the Missouri River, the following described real estate, or any thereof, to wit: The east half of the southwest quarter (E. ½ of S. W. ¼), South half of the southeast quarter (S. ½ of S. E. ¼), Northwest quarter of the southeast quarter (N. W. ¼ of S. E. ¼), and lots numbered ten (10), eleven (11), and thirteen (13), all in section thirty-one (31), township ten (10) north of range one (1) east. Also lots numbered three (3), four (4) and nineteen (19) in section six (6), township nine (9) north of range one (1) east. Also lots numbered four (4), five (5), six (6) and seven (7) and the southwest quar-

ter of the northwest quarter (S. W. ¼ of N. W. ¼) in section five (5), Township nine (9) North of Range one (1) East. Also lots numbered five (5), seven (7), eight (8) and ten (10) in section six (6), township nine (9) north of range one (1) east, of the principal meridian of Montana. All in the County of Lewis and Clarke, State of Montana; also the land on the island in the Missouri River near said above-mentioned property.

"In Witness Whereof we have hereunto set our hands and seals this sixteenth day of January A. D. 1899.

|                              | Louis Stadler.  | [Seal.] |
| ---------------------------- | --------------- | ------- |
|                              | "Mary Stadler.  | [Seal.] |
|                              | "Louis Kaufman. | [Seal.] |

"In presense of Thos. C. Bach, witness for all."

Complainants made replication stating that they would aver and prove their bill to be true. Testimony was ordered heard before the standing Master in Chancery of the court.

T. J. Walsh, for complainants.

Nolan & Loeb, Toole & Bach, and Carpenter, Day & Carpenter, for defendant.

HUNT, District Judge (after stating the facts as above). I have given very careful consideration to the evidence, and, without reciting in detail the testimony, will briefly state my conclusions in respect to the whole case:

Stadler and Kaufman, by their deed of conveyance, Exhibit A, granted to defendants, among other tracts, lot 4 in section 31, without reference to its being an island. And at law it would have made no difference in the validity of their title whether there was or was not an island of part of said lot, provided they owned it at the time of their grant to defendant. Now, defendant, having become the owner, leased back to Stadler and Kaufman lot 4, section 31, together with the other property specifically described. But in the lease, after so specifying lot 4 and the other property which they had theretofore granted to the defendant, there is included "such other land as the party of the first part now owns on the island in the Missouri River near the above-mentioned property." The words used indicate that the parties believed that the defendant owned, or might own land "on" the island in addition to lot 4, and, if it did, the evident intent was to lease it, and it was included. The language used excludes the idea that lot 4, which was a part of a tract designated as the "Yellow Island" on plaintiffs' Exhibit B, was included in the general words, because lot 4 had been already described. Therefore, looking for other property as embraced within the general language, we find that defendant believed it had a claim to certain land on what was known as the "Little Island," a tract of land lying south of and near to the lands specifically described, shown in the government maps to be surrounded by water courses, and designated therein as an island, and spoken of by some of the witnesses at the trial as the "Moran Tract," by others as the "Little Island." I therefore conclude that the evidence sustains the defendant in its contention that this was the land meant in the lease.

But if we assume that complainants are correct in respect to the identity of the tract described in the lease, and that it is a part of the Yellow Island, still the assumption cannot avail them under the law as it must be applied to the written contracts. It is clear that defendant wanted to acquire lands to flood as the demands of its business

133 F.—21

required. In accordance with this general purpose, it proceeded with the condemnation suits in the state courts. After the suits in condemnation had been tried and adjudicated, and before payment to the complainants of the sum awarded by the court, defendant and complainants entered into a contract; such contract being made up of the three distinct contracts, Exhibits A, B, and C. These agreements were made and delivered about the same time. They related to the same matters, as parts of substantially one transaction, and should be construed together, as considerations one for the other. Civ. Code Mont. § 2207; Bailey v. Railroad Co., 17 Wall. 108, 21 L. Ed. 611. The evidence shows that they were all executed for the purpose of making permanent settlement between the complainants and defendant with respect to the acquisition of lands and the flooding of lands, and any damages, past or future, consequent upon flooding by the dam as it was then constructed or might thereafter be raised.

Examining these contracts, we find that the object of the power company in acquiring the lands (637 acres) conveyed by the Deed A was to flood them by their dam. Under the Deed A, the company has a right to flood the lands so acquired, but none other.

Through the Lease and Contract B, the complainants, for an annual rental of $1, obtained a lease for 20 years on the lands they had just theretofore conveyed, and certain other lands which it was believed defendant then owned, or claimed an interest in or ownership of; and in this same contract the defendant corporation acquired the right to flood all of the leased land, and, as an incident, all of the lands of the complainants that might be flooded by raising the dam. The considerations expressed in Exhibit B are "the rents hereinafter reserved and the covenants hereinafter contained  *  *  *  for the term of twenty years, except as hereinafter stated and limited." The rental price of $1 was clearly nominal, and is of itself evidence of the importance of the other covenants contained in the instrument.

The reservation of the lease was as follows:

"Reserving, however, to the said party of the first part, its successors and assigns, the right at all times hereinafter to flood any or all of said premises by the waters of the Missouri River as the same may be raised by the dam belonging to the first party, at Canyon Ferry, Lewis and Clarke County, Montana, as the same now is or the same may be hereafter raised or lowered, and this lease is given subject to this right."

By this reservation the defendant company was secured in the right to flood the land leased to any height by the dam as it existed at the date of the agreement, or as it might be raised thereafter during the life of the lease. The court is not called upon to decide whether the right acquired by the reservation quoted reserved to the defendant the right to flood adjoining lands of complainants, if such flooding were a natural consequence of flooding the particular land leased. A reservation being interpreted in favor of the grantor (section 1473, Civ. Code Mont.), the contract under consideration might have to be so construed. But no opinion is expressed on the point, because we find the following covenant in the lease between these parties:

"And the said second parties for themselves, and each of themselves, their and each of their heirs, executors and assigns, do hereby agree to permit and

recognize the right of said first party to flood said premises by the waters of the Missouri River as they may be raised by the dam belonging to the said first party at said Canyon Ferry, Montana, as the said dam now exists or as the same may be hereafter raised or lowered, without claim for damage."

I construe this covenant as both a grant and a release. The words granting the right to flood the lands described in the lease as may be consequent upon raising the dam created an easement with the burden of a corresponding servitude upon the lands of complainants. The words "without claim for damage" expressly release the defendant from any and all liability for damage for flooding the lands of complainants by reason of raising the dam.

Now, when complainants agreed to permit the defendant to flood the premises described in the lease, and to recognize its right to flood them by raising the dam to any height desired, they granted a right to flood any other land, at least in that vicinity, then owned by complainants, and necessarily flooded by raising the dam, as incident to flooding the land leased. And the evidence and the contracts go to show that the power company contemplated an extensive flooding of lands, and that its agents were looking to future demands for the power to be generated by it, and it is but reasonable to regard the grant as one which could be utilized with such incidents as are necessary to the enjoyment of the right to flood the leased lands by raising the dam. Complainants consented, so far as their rights were concerned, to a right to flood by raising the dam, and they cannot now be heard to complain.

The expression of the covenant "to permit and recoznize the right of" is both permission to flood, and recognition of the right permitted, with its necessary incidents, while the words "without claim for damage" are a release from any and all damage that may be done by flooding not only the leased land, but any other land flooded by raising the dam to any height. All the parties were well aware of the fact that, if the leased lands were flooded as a consequence of raising the dam to a certain height, other lands on about the same level near by would naturally be flooded. Complainants took their chances as to the probability of defendant raising its dam. If it should not be raised, their lease was doubtless a very valuable one. If it should be raised, and their lands were flooded, it was of much less value. The presumption is that, when complainants granted the right to the defendant to raise its dam to any height desired, they granted whatever is essential to the use. Civ. Code Mont. § 4613; Bushnell v. Proprietors, 31 Conn. 157; Washburn on Easements (3d Ed.) p. 46; St. Anthony Falls Water Co. v. Minneapolis (Minn.) 43 N. W. 56.

The release was broad in its terms, and carried with it whatever was necessary to its enjoyment. Updegrove v. Pennsylvania Sch. V. R. Co., 132 Pa. 540, 19 Atl. 283, 7 L. R. A. 213; Burrow v. Terre Haute & L. R. Co., 107 Ind. 432, 8 N. E. 167. Like a grant, it is to be construed against the releasor. Jackson v. Stackhouse, 1 Cow. 126, 13 Am. Dec. 514.

There is another limitation in the lease, which reads as follows:

"It is hereby mutually agreed and understood that if at any time hereafter the dam of the said party of the first part at said Canyon Ferry as it now exists or as it may hereafter be altered or changed shall be washed away so

that it does not afford sufficient power to the said first party, that this lease shall then and there terminate."

There was always the possibility of the work being carried away, and the agreement by which the lease should be terminated, and the land revert to the defendant in such event, goes to show that it was for flooding purposes that defendant acquired the land, and that the price paid covered the rights and easements which were incorporated in the Lease and Agreement B. Goddard on Easements, 109.

Exhibit C is really a release to the defendant for past damages, although it covers damages for future flooding, should there be any arising from the dam as it existed at the time of the execution of the release. As before stated, in my judgment the covenants in Exhibit B were intended to release the defendant company from liability for further damages on account of flooding complainants' land by means of the dam as it then existed or might in the future be raised, while the Release C was designed particularly to release for past damages. It is to be observed that there is no limitation of time in the Release C, while B may be terminated within 20 years, and is only for the term of 20 years. The provisions of B would therefore prevail if doubt arises. The general intent of the whole contract was, I think, that B and C should relate to different conditions pertaining to the same subject: C pertaining to past damages, and B to future damages.

The learned counsel for the complainants earnestly urges the doctrine that grants by implication are not favored. It is true that many decisions to this effect may be cited. But on the other hand, it is a well-established principle that the use and enjoyment of premises granted as were the premises involved in this case necessarily imply, as an incident, the right to flood other lands, if necessary to the enjoyment of the grant, and is, in effect, a grant of such incident. It follows, therefore, that, the complainants having no right to damages as to the lands actually conveyed, the relinquishment of damages precludes their right to damages for the flooding of other lands.

The case must be determined upon the construction of the Instruments A, B, and C, and oral testimony is only possibly material to solve a question which seemed to me to be one of ambiguity, namely, what tract was referred to in the exhibits as on the island in the Missouri river.

Nor does it appear to me that the doctrine of "Expressio unius est exclusio alterius" has application to the case. The grant made by the complainants to the defendant for the purpose of flooding carries with it the right to do those things which are absolutely necessary to the enjoyment of the purpose specified and included in the grant. Civ. Code Mont. § 1250, subd. 10; St. Anthony Water Co. v. City of Minneapolis (Minn.) 43 N. W. Rep. 56; Washburn on Easements, p. 34; Lammott v. Ewers, 106 Ind. 310, 6 N. E. 636, 55 Am. Rep. 746; Horne v. Hutchins (N. H.) 51 Atl. 645; Baker v. Bessey, 73 Me. 472, 40 Am. Rep. 377; Hodge v. Railroad Co. (C. C.) 39 Fed. 449.

Believing, therefore, that the complainants have given defendant the right to do those things which it seeks to enjoin them from doing, their prayer for injunction is denied. Section 4606, Civ. Code Mont.