## MANUFACTURERS NATURAL GAS COMPANY OF INDIANAPOLIS, INDIANA, *v.* LESLIE ET AL.

[No. 2,073. Filed Oct. 27, 1898. Rehearing denied June 30, 1899.]

EMINENT DOMAIN.—*Proceeding to Acquire Easement for Pipe-Line.— Measure of Damages.*—In a proceeding, under the act of February 20, 1889, for the appropriation of an easement in lands for the purpose of laying natural gas mains, the measure of damages is the actual value of the land appropriated, and any injury to the residue. *pp. 679, 680.*

Manufacturers Gas Co. *v.* Leslie.

APPEAL AND ERROR.—*Interrogatories to Jury.*—A party who at the trial of a cause did not object to the submission of special interrogatories to the jury, cannot on appeal complain that such interrogatories were not authorized by statute.  *p. 684.*

From the Madison Superior Court.  *Reversed.*

*M. A. Chipman, S. M. Keltner* and *E. E. Hendee,* for appellant.

*A. C. Carver, Guy Ballard, F. E. Gavin, T. P. Davis* and *J. L. Gavin,* for appellees.

WILEY, J.—This case was transferred from the Supreme Court after a judgment of affirmance had been rendered in that court, and a rehearing granted.  It was a proceeding to appropriate an easement in lands for the purpose of laying natural gas mains, under the provisions of the act of 1889. (Acts 1889, p. 22, section 5103 Burns 1894, and succeeding sections.)

In the case before us there was a disagreement between appellant and appellees as to the appropriation of certain of appellees' lands for such easement, and they were unable to agree among themselves as to what compensation appellant should pay.  Thereupon, appraisers were duly appointed, as provided by law, who assessed damages at $250.  So far as the record shows, all the steps required by statute appear to have been regular, and, on the filing of the report of the appraisers, appellant paid to the clerk of the court the amount assessed for the use and benefit of appellees.  To this report appellees filed exceptions, and appealed to the court below, where the question of damages was submitted to a jury, and the amount assessed by their general verdict was $550.  At the proper time appellant requested the court to submit to the jury certain interrogatories, and require them to be answered in case the jury agreed upon a general verdict. By their answers to interrogatories, the jury specified the different items of damages, and these several items aggregate the amount named in the general verdict; so, as between the general verdict and the answers to the interrogatories, there

is no inconsistency in the amounts. It is earnestly insisted, however, by appellant, that certain items or elements of damages found and specified by the jury in answer to the interrogatories are improper, and do not constitute damages for which it is liable in this proceeding. The several items of damages as specifically found by the jury are as follows: (1) Value of real estate condemned $200; (2) interfering with the cultivation of the soil $50; (3) leakage of gas permeating the soil and entering tile ditches, causing explosions and loss of crops $100; (4) explosion of gas causing damages to persons and stock $50; (5) barring and interfering with improvement of certain parts of the land $75; (6) relation of the balance of the land to the part condemned $75; making a total of $550.

Upon the return of the verdict and answers to interrogatories appellant moved for judgment in its favor on the answers to interrogatories, notwithstanding the general verdict; also moved the court to render judgment for appellees for $250 and $275 respectively, each of which motions were overruled, and appellees motion for judgment for $550 was sustained. Appellant then moved that the judgment be modified so as to be for $250 and $275, respectively, and no more, which motions were each overruled. All these motions are properly reserved and brought into the record by a bill of exceptions. The rulings on these several motions are assigned as errors, and, as they substantially present the same question, they may be considered together. It is specially urged that the items of $100 for leakage of gas causing explosions and loss of crops, and $50 for explosion causing damage to persons and stock, are not proper elements or items of damage, and are erroneously included in the judgment.

The statute under which this proceeding was brought is not as clear and definite as to the question of damages as it might be, yet we think it can be fairly construed so as to carry out the intention of the legislature in passing it. It

provides, where the parties cannot agree, that an appraisement of the damages, etc., shall be made, and, as to the measure of damages, it is provided that "They [the appraisers] shall consider the injury which such owner may sustain by reason of such trenches and pipe-lines, and shall forthwith return their assessment of damages to the clerk of such court, setting forth the value of the property taken or injury done to the property, which they shall assess to the owner or owners separately." This statute is evidently intended to serve the same purpose for the condemnation of lands or to appropriate an easement therein, for the laying of pipe-lines, etc., as the general statute relating to condemnation proceedings in securing the right of way for the construction of railroads. There is this difference, however. In a condemnation proceeding to procure a right of way for a construction of a railroad, the title to such right of way vests in the company, while in a proceeding of this character, the company only acquires an easement. The object, therefore, of the legislature in passing the act we are now considering was to provide landowners a just and adequate compensation for damages incident to the construction of pipe-lines, etc., over and across their lands. Such compensation must be measured by the actual damages to the freehold occasioned by such construction, including the land appropriated and occupied, and the relation of the remaining land thereto.

It is evident that it was not the intention of the legislature to embrace within the statute damages on account of injuries, either to persons or property, that subsequently might occur on account of negligence, etc. Such negligence, resulting in injury, either to persons or property, might create an independent right of action, but it could not be made a basis for estimating the damages to the freehold, growing out of the construction of such pipe-line.

The rule for the assessment of damages in condemnation proceedings for railway purposes is the value of the land actually taken, and any injury to the residue. *Indiana, etc.,*

*R. Co.* v. *Allen*, 100 Ind. 409; *Whitewater Valley R. Co.* v. *McClure*, 29 Ind. 536; *Montmorency Gravel Road Co.* v. *Stockton*, 43 Ind. 328; *Baltimore, etc., R. Co.* v. *Lansing*, 52 Ind. 229. In *Roushlange* v. *Chicago, etč., R. Co.*, 115 Ind. 106, Zollars, J., stated the rule as follows: "The rule as to what damages may be assessed by the commissioners in a condemnation proceeding is, that the value of the land appropriated should be considered, together with any injury to the residue of the land naturally resulting, or that might reasonably be expected to result, from the appropriation and construction of the road in a proper and lawful manner." And in the same case it was further said: "Such assessment of damages will not be presumed to cover damages resulting from the negligent construction of the road, or any portion of it, nor damages resulting from improper encroachments upon land outside of the right of way."

In the case last cited the right of way was conveyed by deed to the railway company, and, after the road had been constructed, it was found that at a certain point on such right of way, the ground was soft, and the road-bed sank. In filling up the depression, appellee encroached upon land outside of the original right of way, and the owner brought his action for damages. In discussing the question the court said: "Had the strip of land been taken by condemnation, instead of by grant, the commissioners or jury in assessing the damages could not have included damages for such encroachment. First, because they could not have assumed that the railroad company would voluntarily so construct its road as to make it rest partially upon land outside the right of way. To have assumed that, and to have assessed damages accordingly, would have been to assume that the railway company would commit a trespass, and have assessed, in advance, damages resulting from such trespass. Second, because they could not have known in advance that the result of the fill would be to cause the embankment so to spread as to encroach upon the appellant's land and cause injury.

Such an injury could not reasonably have been expected to result from the proper construction of the road."

The case of the *Indiana Natural Gas, etc., Co.* v. *Jones*, 14 Ind. App. 55, is in point. It was there held, and we think correctly, that it will not be presumed, in the absence of evidence, that natural gas cannot be conducted through pipes without injury to the premises through which it passes. And in the same case it was further held that damages will not be allowed for probable future losses by fire and explosions, as independent items disconnected from the diminished value of the land, in proceedings to condemn the same for laying pipes to convey natural gas. The questions there discussed and decided arose in condemnation proceedings, and upon an instruction to the jury. In the instruction, the court told the jury that in considering the damages to be assessed they could take into consideration the probability of injuries from fire and explosions which might result from the ordinary, prudent, and careful operation of the pipe-line. And, in another instruction, the court told the jury that they could include not only damages for the injuries to the land resulting from putting in the pipe-line, but also damages which would probably result from the careful and reasonably prudent maintenance of the same in the future. Both of these instructions were held to be erroneous, as not stating the correct rule as to the measure of damages in such proceedings.

The jury found in the case before us that appellees were entitled to recover damages for leakage of gas and the bursting of pipes resulting in injury to crops in the sum of $100, and $50 damages for explosions, to the injury of persons. Under the authorities, these items of damages were not recoverable in this action, and it was reversible error to render judgment for them. Another item of damages, as found by the jury, is as follows: "Barring improvements on certain portion of land, $75." As to whether this is an element of damages proper to be considered in this proceeding, we are

not able to decide from the record. We hold, however, that, under the record as it comes to us, it was improper for the jury to consider it. The evidence is not brought into the record, and whether there was any evidence upon which such damages could be predicated, we are unable to say. If the jury meant to say that at some future time, the appellees might desire to build a house, or some other structure, on the land traversed by appellant's pipe-line, and that such line would interfere therewith, then, in that event, it would be too remote and indefinite to form the basis of the damages specified in the last above mentioned item.

The statute under which these proceedings were had provides that: "Said trenches and pipe-lines in all cases to be laid at such depth as not to interfere with the tillage of the soil, or the existing drainage, and the soil taken from such trenches shall be returned with the top soil on top, as originally found." (Subdivision 4, section 5103 Burns 1894.) The same statute also provides that such trenches shall be constructed in such manner as to afford security to life or property. We must presume that appellant in constructing its pipe-line did so in conformity to the law, and hence, in filling the trench, it placed the top soil on top, so as not to interfere with the cultivation of the soil, or the use of the freehold; and also constructed its pipes in such a manner as to afford security to life and property. If this is true, then, when appellant had fully completed its line and filled the trenches, such line would not interfere with appellees' cultivation, use, and occupancy of the freehold, or prevent them from constructing buildings on any part thereof. The highest duty of a court is to see that justice is meted out, and that the rights of litigants are fully protected. In this case this could not be done by an affirmance of the judgment, for we would thus be holding that appellees could recover certain elements of damages, which the statute does not authorize, which justice does not tolerate, and which this court has specifically decided are not recoverable.

It is insisted by counsel for appellees that, when this action was tried in the court below, there was no statute authorizing the court to submit to a jury interrogatories, and require them to find specially upon particular questions of fact. As to whether there was such authority or not, we do not decide, for the objection comes too late. At the trial of this cause, counsel for appellee recognized the right to have interrogatories submitted to the jury upon particular questions of fact, by not objecting thereto, and, therefore, appellees cannot now be heard to complain. As we have shown in this opinion, the elements of damages that may be recovered in such proceedings are clearly and distinctly marked. Neither courts nor juries can speculate upon the question, for the damages accruing to the freehold are susceptible of direct and positive proof, and hence may be determined by almost mathematical precision.

It is seldom that a case comes to this court where the record presents such a wanton disregard of the legal rights of a litigant as shown by the jury in this case in their answers to interrogatories. If the principle contended for here by appellees should prevail, and become fixed in our jurisprudence, there would be no protection to the rights of those invoking the wholesome doctrine of eminent domain, where the right involved the duty of submitting the question to the arbitrament of a jury. We could on the answers to the interrogatories direct a judgment, but, looking at the entire record, we believe the ends of justice will be best subserved by a new trial of all the issues. The judgment is therefore reversed and a new trial directed.