## CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* SMITH.

[No. 21,424.  Filed January 26, 1912.  Rehearing denied May 10, 1912.]

1. APPEAL.—*Venue.—Objection Below.—Motion for New Trial.— Waiver of Error.*—Where it is claimed that on change of venue the trial court abused its discretion in the matter of selecting the county to which the venue was changed, appellant waived its right to a consideration of the alleged error on appeal by failing to assign it as a cause for a new trial.  p. 531.

2. APPEAL.—*Term-time Appeal.—Bond.—Notice.—Stay of Proceedings.*—In a term-time appeal, the appeal bond operates to stay proceedings on the judgment without a writ of supersedeas, and no notice of the appeal is necessary.     p. 531.

3. APPEAL.—*Term-time Appeal.—Failure to File Bond.—Effect.— Stay of Proceedings.*—Where the appeal bond required by §679 Burns 1908, §638 R. S. 1881, is not filed at all, or not filed within the designated time, or pursuant to the court's order, the appeal operates as a vacation appeal in which notice must be served on appellee to make him a party, and in which, if a stay of proceedings on the judgment is desired, a writ of supersedeas must be issued.  p. 532.

4. APPEAL.—*Notice.—Waiver.*—Appellee's appearance to the appeal, or his joinder in error, or the filing by him of a brief on the merits, waives notice of the appeal.  p. 532.

5. APPEAL.—*Appearance.—Withdrawal.*—Under rule nine of the Supreme Court, an appearance to an appeal cannot be withdrawn except on leave prayed and granted.  p. 532.

6. APPEAL.—*Appearance.—Motion to Dismiss.*—Where appellee has appeared and filed a brief on the merits, regardless of whether he was under an excusable misapprehension of facts in so doing, unless such appearance shall have been withdrawn, he has no ground on which to predicate a motion for dismissal because of the lack of the statutory notice required in a vacation appeal, or because of appellant's failure to comply with the statutory requirements of a term-time appeal.  p. 532.

7. APPEAL.—*Record.—Complaint.—Designated in Record as "Petition."*—A complaint is properly in the record, although designated as a "petition" by the clerk in reciting the filing thereof in the order book entry.  p. 533.

8. CONSTITUTIONAL LAW.—*Bill of Exceptions.—Statute Permitting Extension of Time for Filing.*—The act of 1905 (§661 Burns 1908, Acts 1905 p. 45), providing for the extension of the time

for filing a bill of exceptions containing the evidence, is not in conflict with §1 of the fourteenth amendment to the Constitution of the United States. p. 533.

9.  EMINENT DOMAIN.—*Appeal.—Parties.*—Where the appellee's wife was made a party defendant to the complaint in a condemnation proceeding, but in the order appointing appraisers it was expressly found that she had no interest in the damages to be awarded and that all damages should be awarded to the husband, and she neither excepted to nor appealed from the order, and the warrant to the appraisers directed that the award should be made to the husband alone, who alone excepted to it, and the verdict and judgment were in favor of the husband alone, the wife was not a necessary party to the appeal. p. 533.

10.  EMINENT DOMAIN.—*Trial.—Instructions.—Right of Way Dividing Farm into Separate Tracts.—Question for Jury.*—Where a railroad's right of way was appropriated through a farm in 1869 and in 1906 additional land was appropriated for the purpose of widening the way and reconstructing the tracks, and the evidence showed that the farm had ever since the first appropriation been farmed as a single farm and that all the buildings were on one side of the railway, it was for the jury to determine whether, at the time of the last appropriation, the tracts on each side of the old right of way were separate and distinct tracts, and a requested instruction, that in estimating the damages resulting from the last appropriation the jury must consider the land north of the old right of way as a separate and distinct tract and determine the damages to it independently of the other land and as if it were the only land owned by the defendant, was properly refused. p. 538.

11.  EMINENT DOMAIN.—*Right of Way.—Easement.*—Under our statute a railroad company acquires a mere easement by its appropriation of a right of way. p. 538.

12.  EASEMENT.—*Implied Easement.—Way of Necessity.—Private Railroad Crossing.—Instructions.*—Where, after the condemnation of land for a railroad right of way through a farm, there was no practical means of travel between the portions of the farm thus separated, except over the right of way, a right of way of necessity was, by legal implication, reserved in the owner when the original condemnation proceedings were had, so that, in a second condemnation proceeding for the purpose of widening the railroad right of way and improving the track, a requested instruction to the effect that the owner of the land was not entitled to damages for the destruction of his private crossing was properly refused. p. 539.

13.  TRIAL.—*Instructions.—Conformity to the Issues.*—Where the complaint disclosed no fact on which the theory of plaintiff's

requested instructions were predicated, they were properly refused. p. 540.

14. EMINENT DOMAIN.—*Title Acquired.*—*Right to Take Material for Roadbed.*—*Abandonment.*—*Evidence.*—Evidence that a railroad company, on acquiring its right of way through a farm in 1869, condemned strips 120 feet wide at the side thereof for material in making the roadbed, and after the completion of the roadbed in 1870, the strips were fenced and farmed by the owner until the year 1906, shows an abandonment of the right to take material therefrom. p. 540.

15. EMINENT DOMAIN.—*Railroad Right of Way.*—*Assessment of Damages.*—*Obstruction of View.*—*Instructions.*—Where the complaint of a railroad company alleged that the appropriation of additional land along its right of way through defendant's farm was necessary because of the proposed raising of the tracks and the widening of the base of the fill, and the evidence showed that by the new location and construction the line of the rail center was changed about thirty feet south, that the base of the embankment at that point covered the entire right of way, old and new, and that its sides had rolled and washed down into appellee's fields, that the rails on the new location, though still within the lines of the old right of way, were about twenty feet higher than formerly, thereby cutting off appellee's view from his residence of the crops and stock on the land south of the track, no reversible error was committed by the trial court in refusing instructions requested by appellant to the effect that no damages were allowable by reason of cutting off the view of the land south of the railroad, that appellant had the right to elevate its track as it saw fit on its old right of way, and that no damages are recoverable for anything resulting from such elevation. pp. 540, 542.

16. PLEADINGS.—*Allegations.*—*Effect.*—Parties are bound by the allegations of their pleadings. p. 541.

17. TRIAL.—*Instructions.*—*Surface-Water.*—*Right of Railroad Company.*—*Condemnation Proceedings.*—Where the purpose of an action was to ascertain the amount of compensation due to appellee for the condemnation of his land for railroad right of way, instructions requested by appellant to the effect that appellant had the right to fight against surface-water in any way it saw fit, and would not be liable to appellee because of surface-water flowing upon appellee's lands from its right of way, so long as there was no interference with a natural watercourse, aside from the omission of the exception of liability for collecting surface-water in artificial channels and throwing it onto the adjoining land, were erroneous. pp. 542, 543.

18. WATERS AND WATERCOURSES.—*Surface-Water.*—*Rights of Landowner.*—It is the law in this State that a landowner, not inter-

fering with a natural or prescriptive watercourse, has the right to repel surface-waters from adjoining lands, and that a railroad company, after it has acquired and paid for its right of way, is accorded the same right. p. 542.

19.  EMINENT DOMAIN. — *Compensation.* — *Depreciation.* — *Future Damages.—Danger from Fire.—Instruction.*—In a condemnation proceeding by a railroad company to acquire land for a right of way, the possible danger from fire emitted from locomotives when properly equipped and operated to prevent the escape of fire, is a legitimate matter to be considered relative to the depreciation of the market value of the residue of the lands out of which the right of way is carved, and appellant's requested instruction that the jury should not consider any possible future damage to appellee's property by reason of the operation of the railroad on the right of way appropriated on appellee's land was properly refused. p. 543.

20.  EMINENT DOMAIN.—*Railroad Right of Way.—Additional Appropriation of Land.—Compensation.—Danger from Fire.*—In a condemnation proceeding by a railroad company to acquire additional land for widening its right of way and reconstructing its tracks, the only damages allowable relating to danger from fire on the right of way are those resulting from the new appropriation. p. 543.

21.  TRIAL.—*Refusal of Instructions.—Points Covered by Instructions Given.*—A requested instruction was properly refused where other instructions given properly informed the jury with respect to the matters set out in the one requested. p. 544.

22.  TRIAL.—*Instructions.—Condemnation Proceedings.—Damages.— Tracts of Land Composing One Farm.*—In a condemnation proceeding by a railroad company to acquire additional land for widening its right of way, where it appeared that a portion of appellee's land was cut off from the remainder by reason of the original appropriation for right of way, it was not error to instruct the jury that if the lands affected are owned by one person and used as one farm, damages should be considered and assessed for the entire farm. p. 544.

23.  EMINENT DOMAIN.—*Condemnation Proceedings.—Instructions. —Damages.*—In a condemnation proceeding by a railroad company to acquire additional land for widening its right of way and reconstructing its track, an instruction that the jury might consider as proper elements of damages, "the uses to which the land may be put * * * and the interference with the ingress or egress, * * * the interruption of the communication from one portion of the farm to the other resulting from the alteration and reconstruction * * * of the railroad, * * * upon the lands appropriated, * * * the annoyance and inconvenience,

if any, occasioned by such alteration and reconstruction upon the lands appropriated in crossing the railroad from one portion of the farm to another," was not erroneous as permitting a recovery of damages occasioned by alterations within the limits of the old right of way, since such element is expressly excluded by the phrase "upon the lands appropriated." p. 545.

24. EMINENT DOMAIN.—*Compensation.—Obstruction of Access.— Instruction.*—Where a railroad company appropriated additional land for widening its right of way and reconstructing its road through a farm, and elevated its road so as to destroy a private crossing of the owner, and made the new grade so high and steep that ingress and egress over the railroad from one portion of the farm to the other was very difficult and so hindered as reasonably to cause annoyance and inconvenience, an instruction that the interruption of the communication from one portion of the farm to another, and the annoyance and inconvenience, if any, resulting from such alteration and construction, was proper, since the "interruption," "annoyance" and "inconvenience" relate to the effect of physical barriers against ingress and egress, and not to mental conditions caused by the operation of the railroad. p. 545.

25. TRIAL. — *Instructions.—Condemnation Proceedings.—Damages.* —An instruction in a condemnation proceeding that "When a railroad company appropriates land and takes possession of same and constructs its improvements thereon, it will be presumed, in the absence of proof to the contrary, that the improvements were properly and skillfully made, and where damages result therefrom to the remaining portion of the land from which said lands were taken, it will be presumed that the same were the natural consequences of the appropriation and proper use of the lands so taken and in such case the owner of the lands from which the same was taken by said appropriation, should be fully compensated for all damages he has sustained or will sustain on account of the taking of the lands for the use sought," is erroneous. pp. 546, 547.

26. EMINENT DOMAIN. — *Assessment of Damages. — Time From Which Damages Assessed.*—Damages are assessed in condemnation proceedings, as of the date of the appropriation. p. 546.

27. EMINENT DOMAIN.—*Compensation.—Measure of Damages.— Railroad Right of Way.*—Damages for the appropriation of land for a railroad right of way are such as might reasonably be expected to result from the appropriation and construction of the road in a proper and lawful manner, and the assessment should not cover damages resulting from the negligent construction of the road, nor from improper encroachments upon the land outside the right of way. p. 546.

28. RAILROADS.—*Operation.—Injury to Real Estate.—Remedy of Land Owner.*—For an injury to the real estate outside the limits

of a railroad's right of way, caused by negligent construction or maintenance, or trespass, the owner has his remedy by common law action for damages.   p. 546.

29.   TRIAL. — *Instructions. — Condemnation Proceedings.—Interference with Natural Watercourse.*—Where, by the appropriation of land for a railroad right of way, the water from a spring which in its natural flow had passed over the land of appellee prior to such appropriation, was included within the limits of the land appropriated so that it no longer touched the appellee's land, an instruction as to the rights of a land owner in water flowing in its natural course across his land, which proceeded on the theory that appellee could not enter on the right of way and pipe the water onto his own land, was erroneous. pp. 546, 550.

30.   EMINENT DOMAIN. — *Title and Rights Acquired. — Railroad Right of Way.—Spring or Watercourse.*—A railroad company's right of possession to the surface of its right of way is practically exclusive, yet, where it appears that by its appropriation of a right of way the natural course of a stream of spring water was included within the limits of the right of way, and that the circumstances are such that the owner of the land can conduct the water from the stream onto his land outside the right of way without any practical interference with the company's exclusive possession, he has the right so to do.   p. 549.

31.   EMINENT DOMAIN.—*Compensation.—Measure of Damages.—Railroad Right of Way.—Watercourses.*—Where a landowner, after the appropriation by a railroad company of a right of way through his land which included a natural stream, had the right to divert the water of the stream from the right of way onto his land outside the right of way, his damages because of including the stream in the land appropriated would be measured by the necessary expense of diverting the water onto his land in such manner as to make it as useful to the land as it was before the appropriation, and in case it cannot be made as useful as it was before, there should be added a sum equal to the diminution in value between the former and the latter uses, but in no event can the damages exceed the value of the use of the water as it existed before the appropriation.   p. 549.

32.   HIGHWAYS.—*Right of Owner of Fee.*—As long as he does not interfere with the public use, the owner of the fee in a suburban highway may use it as he sees fit. p. 550.

33.   EMINENT DOMAIN.—*Compensation.—Taking of Subway Under Highway.—Evidence.*—Where appellee's use of a subway, under a highway in which he owned the fee, in nowise conflicted with the rights of the public in the use of the highway, the taking of the subway by a railroad company by its appropriation of land

for a right of way constituted an element of damage, and the admission of testimony as to appellee's use of such subway was not error. p. 550.

34. EVIDENCE. — *Admissibility.*—*Value of Property.*—*Compromise Sale.*—Sales made to a railroad company in settlement of right of way, even if not by way of compromise, are affected by an element which does not enter into sales made in the ordinary course of business, and are not a fair criterion of value in the assessment of damages resulting from the appropriation of land for a railroad right of way. p. 551.

35. EVIDENCE.—*Admissibility.*—*Value of Property.*—*Condemnation Proceeding.*—In a proceeding to assess damages because of the appropriation of land by a railroad company for right of way, the admission of evidence of what was paid for other strips of land appropriated by the company in the same vicinity was erroneous. p. 551.

From the Putnam Circuit Court. *James M. Rawley,* Judge.

Action by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company against Alvah B. Smith, to condemn land for right of way. From a judgment awarding damages, the plaintiff appeals. *Reversed.*

*Enloe & Pattison, Frank L. Littleton, John J. Kelley, Leonard J. Hackney, George A. Knight* and *Tarvin C. Grooms,* for appellant.

*George W. Brill, George C. Harvey, S. A. Hays* and *Samuel Ashby,* for appellee.

MORRIS, C. J.—Action for condemnation under the eminent domain act of 1905 (Acts 1905 p. 59, §929 Burns 1908). The only question involved is the amount of damages. Appellant's right to exercise the power of eminent domain with reference to the real estate involved was determined by this court in *Smith* v. *Cleveland, etc., R. Co.* (1908), 170 Ind. 382, 81 N. E. 501.

The cause was submitted to a jury for determination, which returned a verdict for appellee for $9,500. From a judgment on that verdict appellant prosecutes this appeal.

The errors assigned here are the action of the lower court

in changing the venue of the action to the Putnam Circuit Court and in overruling appellant's motion for a new trial.

The cause originated in the Hendricks Circuit Court. On the verified motion of appellant for a change of venue from the county, the venue of the action was changed to

1. the Putnam Circuit Court. Appellant objected to having the case sent to Putnam county, because, it alleged, a prejudice existed there against appellant and its cause of action. It is claimed that the Hendricks Circuit Court abused its discretion in the matter of selecting the county to which the venue was changed.

In appellant's motion for a new trial, this was not assigned as error. By failing to assign this as a cause for a new trial, appellant has waived its right to a consideration, by this court, of the alleged error. *Wilson* v. *Johnson* (1896), 145 Ind. 40, 38 N. E. 38, 43 N. E. 930; *Southern R. Co.* v. *Sittasen* (1906), 166 Ind. 257, 76 N. E. 973; *Mannix* v. *State, ex rel.* (1888), 115 Ind. 245, 17 N. E. 611.

This was a term-time appeal. The bond was filed in the court below within the time designated, and the transcript was filed here within sixty days thereafter. The surety designated and approved by the trial court, was the American Surety Company. The surety executing the bond was the National Surety Company. Long after appellee had appeared and filed his brief on the merits of the case, he filed his motion here to dismiss this appeal, because the appeal bond was not executed by the surety designated and approved by the court. In his motion, duly verified, he shows that he had no knowledge of the variance in sureties until after his brief on the merits had been filed. No leave was asked to withdraw his appearance here.

The object of an appeal bond is to stay proceedings on the judgment. In a term-time appeal, such proceedings are stayed without a writ of supersedeas, and no notice

2. of the appeal is necessary. If, however, the appeal bond required by the statute (§679 Burns 1908, §638

R. S. 1881) is not filed at all, or not filed within the designated time, or pursuant to the court's order, the appeal cannot operate other than as a vacation appeal, which 3. requires notice to be served on the appellee, to make him a party to the appeal, and, if it is desired to stay proceedings on the judgment, requires the issuance of a writ of supersedeas. §§679-682 Burns 1908, §§638-641 R. S. 1881; *Michigan Mutual Life Ins. Co.* v. *Frankel* 4. (1898), 151 Ind. 534, 50 N. E. 301. An appearance by appellee, to appellant's appeal, dispenses with the necessity of notice. A joinder in error is a waiver of notice *(Lowe* v. *Turpie* [1897], 147 Ind. 652, 672, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 233); so is the filing of a 5. brief on the merits *(Hazleton* v. *De Priest* [1896], 143 Ind. 368, 42 N. E. 751; Ewbank's Manual §§163, 164; *Jones* v. *Henderson* [1898], 149 Ind. 458, 49 N. E. 443; *West* v. *Cavins* [1881], 74 Ind. 265). An appearance cannot be withdrawn, except on leave prayed and granted. Rule nine of this court.

Regardless of the excusable misapprehension of facts by an appellee, under which he appeared and filed a brief on the merits, unless such appearance shall have been 6. withdrawn, under rule nine, he has no ground on which to predicate a motion for dismissal because of lack of the statutory notice required in a vacation appeal, or because of appellant's failure to comply with the statutory requirements of a term-time appeal, which are designed to subserve the same purpose as the notice required in a vacation appeal. The motion to dismiss is overruled.

Appellant assigned 105 causes for a new trial in its motion therefor. Those for which a consideration has not been waived, appellee seeks to obviate by asserting and maintaining 146 propositions.

Appellee insists that the complaint is not in the record. This proposition is based on the fact that the clerk in mak-

7. ing the order-book entry in the case used the word "petition", instead of the word "complaint", in reciting the filing thereof.

This court was constituted for the purpose of correcting substantial errors of lower courts; and does not consider barren technicalities.

Without setting out appellee's points, it is sufficient to say that the pleadings and evidence are properly in the record.

8. An extension of time was granted to appellant to file its bill of exceptions containing the evidence, under the act of 1905 (Acts 1905 p. 45, §661 Burns 1908). Appellee claims this act is invalid, because in conflict with §1 of the fourteenth amendment to the Constitution of the United States. There is no such conflict.

Appellee insists that the appeal should be dismissed under rule six of this court, because Martha E. Smith, wife of appellee, was not made a party.

9. Appellee's wife was made a party defendant to the complaint when filed. In the order appointing appraisers, it was expressly found that she had no interest in the damages to be awarded, and that all damages should be awarded to appellee. She did not except to this order, or appeal therefrom. The warrant to the appraisers directed that the award should be made to appellee alone. Appellee excepted to the award, but Mrs. Smith did not. The verdict and judgment were in favor of appellee alone.

Mrs. Smith was not a party to the judgment below, and was not a necessary party to the appeal, and, consequently, there is no merit in appellee's motion to dismiss the appeal. *Alexander* v. *Gill* (1892), 130 Ind. 485, 30 N. E. 525; *Mueller* v. *Stinesville, etc., Stone Co.* (1900), 154 Ind. 230, 56 N. E. 222; Ewbank's Manual §146; *Ward* v. *Yarnelle* (1910), 173 Ind. 535, 91 N. E. 7; *Smith* v. *Gustin* (1907), 169 Ind. 42, 80 N. E. 959, 81 N. E. 722.

In 1869, John W. Smith was the owner of a farm in Hendricks county, consisting of a quarter section containing 160 acres, a forty-acre tract lying east of the southeast quarter of the 160-acre tract, and a twelve-acre tract lying south of the eastern half of the entire tract. In 1869 appellant's predecessor, the Indianapolis and St. Louis Railway Company, condemned a right of way for its railroad, almost east and west in direction, through the Smith farm. This right of way was 100 feet wide through the forty-acre tract and 110 feet wide through the 160-acre tract. At the same time, to secure materials "to make the roadbed", there was condemned on each side of the 110-feet right of way through the 160-acre tract a strip 120 feet wide. Over eighty acres of the farm was south of the right of way condemned. The buildings on the farm were all north of the railroad. White Lick creek flows through the farm, from north to south, and east of the center thereof.

In 1870, after the road was constructed, fences were erected on the lines of the right of way, and thereafter maintained.

The dwelling-house of Smith was near the west line of the farm. Near this was the principal barn, and other outbuildings. Across the railroad, south of these buildings, was a tract containing over forty acres, lying west of the creek. This was not touched by any highway. From the completion of the railroad in 1870, to the time of John W. Smith's death, which occurred in 1883 or 1884, the only means of communication, used in transporting farm products and machinery, between this forty-acre tract, and the tract north of the railroad, was a crossing over the railroad, south of Smith's residence. This crossing was entered through gates maintained in the fences along the right of way.

On the death of John W. Smith, appellee, his son, inherited the farm, and has owned it ever since.

Until the commencement of this action, the crossing was used continuously and uninterruptedly by the owner of the

farm, since 1870, for hauling grain, farming implements, threshing machinery, and driving stock, between the west forty-acre tract, south of the railway, and the portion of the farm north thereof. Evidence was given showing that by reason of the width of the creek, the nature of its banks, and the nature of its bed, it was not practicable to cross it for hauling farm products or machinery between the tracts on the east and the west sides of the creek, south of the railroad.

The two 120-foot strips, condemned for material for a roadbed, were, after the completion of the roadbed in 1870 to the commencement of this action, in the continuous and exclusive possession of the owner of the farm, and were separated from the right of way by fences, and were used by the owner for farming and pasturage purposes. From portions of these strips quantities of earth had been removed in 1869 to make the roadbed.

A public highway, called the "Plainfield road," ran north and south through the farm about seventy rods west of the east line thereof. At the railroad crossing this highway was within a few feet of the east bank of the creek, the creek there being farther east than at any other point in the farm.

East of the creek, and on the south side of the right of way, just east of appellee's lands, the waters of a continually flowing spring ran from the lands of one Carter onto appellant's right of way. This water flowed west in an open ditch constructed by appellant, and emptied into Lick creek. For a portion of the distance this ditch was on the railroad right of way, and for other portions thereof it was on appellee's land, without the limits of the old right of way, but within the limits of the new appropriation. This spring water never froze, and was continuously used by the owner of the farm for stock water.

This ditch passed under the Plainfield road through a subway about six feet high, and this subway was continuously used by the owner of the farm for a passageway for cattle

and other stock between the lands south of the railroad, on the east and west sides of the highway.

Just west of the private railroad crossing there was a sewer-pipe under the old embankment. Through this there passed the surface-water which came down from about 150 acres of land to the north and west. This surface-water crossed the right of way to appellee's land on the south thereof, and was then taken in an open ditch, on appellee's land, adjoining the right of way fence, east, to White Lick creek. Emptying into this ditch on appellee's land was a system of about 300 rods of covered tile drains, which drained portions of the land south of the railroad.

Appellant's amended complaint was filed in 1906. It alleges, among other things, that, through appellee's real estate, its line of railway is unnecessarily inconvenient and expensive to operate, by reason of unavoidable curves, grades and other causes, and the line will be greatly improved by making alterations in the line, by straightening curves, changing grades, raising bridges and fills, and making additional tracks; that appellant's board of directors has determined to make such changes; that, in order to do so, it desires to appropriate certain land of appellee's, situate on each side of its right of way; that the appropriation of said land is necessary for the appellant's use in making said changes and alterations, because of the raising of plaintiff's track, and the widening of the base of the fill of said tracks.

The changes contemplated by the complaint were authorized by the act of 1903 (Acts 1903 p. 218). *Smith* v. *Cleveland, etc., R. Co., supra,* pages 395, 396. Appellant's entire farm is described in the complaint.

The cause was tried in April, 1908. At that time the work of reconstruction practically had been completed.

By this last condemnation, a strip twenty feet wide was taken on the north side of the right of way through the

160-acre tract, a strip five feet wide on the north side through the forty-acre tract, a strip eighty feet wide on the south side through the 160-acre tract, and a strip eighty-five feet wide on the south side through the forty-acre tract. The total area taken was nine and six-hundredths acres.

Appellant erected fences on the new lines of its right of way. At certain places these were crushed down by the earth sliding over them from the new embankments.

The grade was materially raised through appellee's farm. South of his residence it was raised as much as twenty feet above the former grade. As a result of this, the view from his residence of the land lying south of the railroad was cut off. At the highest point the new grade was about fifty feet high, and the base of it occupied all the right of way, including the new appropriation, and, in addition, the earth from the sides of the grade rolled and washed down on appellant's land outside the new right of way, and spread over a large area—one witness says about six acres—of appellee's land.

Before the alteration there was a single track of railway; afterwards, two tracks were laid. The top of the new embankment is about thirty-five feet wide and the center line between the new tracks is about thirty feet south of the center line of the old track. The private crossing was destroyed.

To make approaches for a new crossing would involve a cost, estimated by witnesses, in amounts ranging from $1,000 to $4,000.

The old ditch, south of the right of way, east of the creek, was filled up, and the water from the Carter spring now passes wholly on appellant's right of way, and does not touch appellee's land outside thereof. The subway, east of the creek, was filled up, and a new bridge, through which the spring water flows, was constructed on appellant's right of way. To this spring water, appellee has no access.

The open ditch on the southwest track, constructed by appellee, was destroyed, leaving his tile-drain without outlet.

The sewer-pipe, west of the old private crossing, was not replaced, and the surface-water, formerly carried through the sewer, runs to the east of the north side of the right of way, and spreads out over appellee's bottom lands.

Appellant, by its requested instruction eight, sought to have the jury informed that in estimating the damages it must consider the land north of the old right of way as a separate, independent tract, and determine the damages to it independently of its connection with the land south of the right of way, and determine the damages to it as if it were the only land owned by appellee.

The court refused this instruction, and, as claimed by appellant, erroneously, for the reason that the first condemnation divided the farm into separate, independent tracts.

The court did not err. The right which a railroad company acquires by the appropriation of a right of way, under our statute, is a mere easement. *Quick* v. *Taylor* (1888), 113 Ind. 540, 16 N. E. 588; *Cincinnati, etc., R. Co.* v. *Geisel* (1889), 119 Ind. 77, 21 N. E. 470.

The imposition of this easement does not, in itself, divide a farm into separate tracts. *Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529, 30 N. E. 636.

Whether the tracts north and south of the old right of way, were, at the time of the last appropriation, separate and distinct tracts, was a question of fact for the jury to determine. The evidence given by appellee showed that the farm had, since the first appropriation, been farmed as a single farm, by the owner; that all the buildings, including appellee's dwelling, two tenement houses and three barns, were on the north side of the railway, and that a crossing from one tract to the other had been used continuously in such farming operations. In view of this evidence,

the requested instruction, had it been given, would have been erroneous. *Chicago, etc., R. Co.* v. *Huncheon, supra.*

For the same reason, appellant's requested instruction ten was correctly refused.

Appellant's sixth requested instruction, which was refused, was to the effect that appellee was not entitled to any damages for the destruction of the private crossing.

12. Appellant's theory, in support of this request, is that appellee's land was permanently separated into two tracts by the 1869 condemnation, with no right to a crossing; that the use of the crossing by the owner since 1870 was not shown by the evidence to have been adverse, and, consequently, appellee acquired no easement by prescription; that if the Act of April 8, 1885 (Acts 1885 p. 148, §§5444, 5445 Burns 1908), providing for driveways across railroads, shall be so construed as giving a private crossing to appellee, for which he would be entitled to damages on its destruction, the act would violate article 1, §21, of the Constitution of Indiana, and the 14th amendment of the federal Constitution.

Under the facts in this case, it is unnecessary to determine whether appellee was the owner of an easement in a way across the tracks by prescription, or by virtue of the crossing act of 1885, *supra*. There was, after the 1869 condemnation, no practical means of travel to or from the tract south of the railroad and west of the creek, except over appellant's right of way, and in such case, a right of way of necessity, was, by legal implication, reserved in the owner, when the original condemnation proceedings were had. *John Hancock Mut. Life Ins. Co.* v. *Patterson* (1885), 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550, and cases cited; *Ellis* v. *Bassett* (1891), 128 Ind. 118, 27 N. E. 344, 25 Am. St. 421; *Lamott* v. *Ewers* (1886), 106 Ind. 310, 6 N. E. 636, 55 Am. Rep. 746; 14 Cyc. 1166; *Gains* v. *Lunsford* (1904), 120 Ga. 370, 47 S. E. 967, 102 Am. St. 109; *Rollo* v. *Nelson*

(1908), 34 Utah 116, 96 Pac. 263, 26 L. R. A. (N. S.) 315 and note; *Uhl* v. *Ohio, etc., R. Co.* (1899), 47 W. Va. 59, 34 S. E. 934; *Dubbs* v. *Philadelphia, etc., R. Co.* (1892), 148 Pa. St. 66, 23 Atl. 883. Refusing the above instruction was not error.

By its third and fifth requested instructions, appellant sought a charge to the jury, informing it that no damages were allowable for excavating and taking materials from the two 120-foot strips, condemned in 1869, for materials for a roadbed. These instructions were requested on the theory that appellant's predecessor, having condemned these strips in 1869, to get materials for its roadbed, the right to excavate and take materials therefrom still continues.

If any evidence was given to which such instructions were applicable, it has not been set out in appellant's brief. The complaint does not disclose any fact on which a theory, that appellant had any right or interest in the 120-foot strips, can be predicated. Appellant is bound by the allegations of its complaint. *Evansville Terminal Railway* v. *Heerdink* (1910), 174 Ind. 537, 92 N. E. 548. Aside from this, the evidence shows that the 1869 condemnation of these strips was only for materials for making a roadbed. After the roadbed was completed in 1870, the land was fenced, and has been farmed since by the owner. If it could be held that by such condemnation the railroad acquired the right to take material at any time in the future from these strips, it is shown by the evidence that such right was abandoned.

The lower court correctly refused to give the instructions.

Appellant by its requested instruction one sought to have the jury informed that no damages were allowable by reason of the view of the portion of the farm south of the railroad being cut off by the elevation of the grade in the new construction; and by its second requested

instruction, it sought to have the jury informed that appellant had the right to elevate its grade as it saw fit on its old right of way, and damages are not recoverable for any thing resulting from such elevation. Conceding that the company had the right to elevate the grade on its old right of way to any height it saw fit, without liability for resulting injuries, it does not follow, under the pleadings and evidence here, that the above instructions state the law correctly.

It was alleged in the complaint that the appropriation of the additional land was necessary, because, among other things, of the proposed raising of plaintiff's tracks and the widening of the base of the fill. Appellant's map, introduced in evidence, shows that, at the point opposite appellee's residence, the line of the rail center was changed about thirty feet south by the new location, and, as the new construction was of double tracks, the south rail of the new south track was still further south of the place occupied by the south rail of the old track.

Evidence given shows that the base of the embankment, as reconstructed at that point, covered the entire right of way, old and new, and, even with that, the sides of the embankment had rolled and washed down into appellee's fields.

While the evidence shows that the rails on the new location are still within the lines of the old right of way, it also shows them to be on a line south of the old location; and about twenty feet higher than formerly, at points near a line running south from appellee's residence.

Whether the track might have been elevated on the old line so as to obscure the view, is a matter of speculative interest only, because the old rail line was abandoned, and the elevation of the new line requires for support all the land taken at this place by the new appropriation.

Parties are bound by the allegations of their pleadings. *Goldthwait* v. *Bradford* (1871), 36 Ind. 149; *Fuller* v. *Exchange Bank* (1906), 38 Ind. App. 570,

78 N. E. 206; *Evansville Terminal Railway* v. *Heerdink,* *supra;* 31 Cyc. 87.

In any event, if any evidence was given showing that it would have been possible to have elevated the track on the old right of way enough to have cut off the view, it is not set out in appellant's brief.

Plaintiff's residence was located on high ground, from which, before the elevation, his view of crops and stock on the land south of the track was unobscured. We cannot say that cutting off this view did not constitute an element of damage.

No reversible error was committed in refusing the above requested instructions.

Appellant, in its seventh and eleventh instructions, requested the court to inform the jury that appellant had the right to fight against surface-water in any way it saw fit, and would not be liable to appellee because of surface-water flowing upon defendant's lands from its new right of way; that so long as there is no interference with a natural watercourse, appellant had the right to protect its right of way from surface-water, by embankments or in any way it saw fit, without liability therefor.

Aside from the omission in the instructions, of the exception of liability for collecting surface-water in artificial channels, and throwing it onto the adjoining land, these instructions are otherwise erroneous. It is the law in this State, thoroughly settled, that a landowner, not interfering with a natural or prescriptive watercourse, has the right to construct barriers to repel surface-waters flowing thereon from adjoining lands, and that a railroad company, after it has acquired and paid for its right of way, is accorded the same right. *Clay* v. *Pittsburgh, etc., R. Co.* (1905), 164 Ind. 439, and numerous cases cited on page 444, 73 N. E. 904.

Here, appellant does not, now, fully occupy the position of landowner. The only purpose of this action is to ascer-

tain the amount of compensation due appellee for the condemnation, and when this is ascertained and paid appellant will be in the position of a landowner, with full rights to repel surface-water from its right of way without further compensation. The right to occupy such position might, in some cases, be the principal element of damage, as it was in the case of *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 80 N. E. 420, wherein it was held that the railway company was liable, in a condemnation action, for the obstruction of surface-water drainage. In that case, as here, the construction was practically completed before the trial, and this court said on page 214: "We know no better way of ascertaining such damages than by observing the actual effects upon the premises after the construction of the railroad is accomplished."

Appellant, by its fifteenth requested instruction, sought to have the jury informed that it should not, among other things, consider any possible future damages to appellee's property by reason of the operation of the railroad on the right of way appropriated from the lands of defendant.

This instruction might be correct if applied to an electric railway, but in case of steam roads the possible danger from fire emitted from locomotives when properly equipped and operated to prevent the escape of fire, is a legitimate matter to be considered relative to the depreciation of the market value of the residue of the lands out of which the right of way is carved. *New Jersey, etc., R. Co.* v. *Tutt, supra,* page 218, and cases cited; *Indianapolis, etc., Traction Co.* v. *Larrabee* (1907), 168 Ind. 237, 242, 80 N. E. 413, 10 L. R. A. (N. S.) 1003. The damages awarded in the condemnation of 1869 included all damages, present and prospective, relating to danger from fire on the right of way then condemned, from locomotives properly equipped and operated; and in this case the only damages, if any, properly allowable in this respect are those resulting from

the new appropriation. There was no error in refusing the requested instruction. Of course any injury resulting to the property from the negligent operation of the road, such as the negligent escape of fire from locomotives, would not constitute a proper element of damage, because there is an adequate remedy for such injury.

Complaint is made of the lower court's refusal to give appellant's requested instruction seventeen, which states a rule for the guidance of the jury in determining the weight of the evidence of witnesses. Conceding that this instruction states a correct rule, no harm resulted from the refusal, for instruction eighteen, requested by appellant, and given, and other instructions given by the court, sufficiently informed the jury of the rule governing its deliberations with respect to the matters set out in the seventeenth instruction, requested by appellant.

By its third instruction given, the court informed the jury that where the lands affected are parts of one farm, if owned by one person, and used as one farm, damages should be considered and assessed for the entire farm. Appellant's counsel object to this instruction, because, as they assert, the condemnation of 1869, of itself separated the farm into two distinct tracts. For reasons stated heretofore in this opinion, appellant's position is not tenable. *St. Paul, etc., R. Co.* v. *Murphy* (1873), 19 Minn. 500; note to *Winona, etc., R. Co.* v. *Waldron* (1865), 88 Am. Dec. 100, 119, and cases cited.

Appellant's counsel criticise the fourth, fifth and sixth instructions given, because, they allege, these instructions permit the award of damages for such part of the "alteration and reconstruction" as was wholly within the limits of the old right of way. These instructions are not fairly chargeable with the above criticism.

In its seventh instruction the court informed the jury it might consider, as proper elements of damages, "the uses to which the land may be put * * * and the interference

with the ingress or egress, * * * the interruption of the communication from one portion of the farm to the other, resulting from the alteration and reconstruction * * * of the railroad, * * * upon the lands appropriated, * * * the annoyance and inconvenience, if any, occasioned by such alteration and reconstruction upon the lands appropriated in crossing the railroad from one portion of the farm to another."

Appellant contends that this instruction was erroneous, because it permits a recovery of damages for elements that are remote and speculative, and also elements occasioned by alterations, etc., within the limits of the old right of way. The latter element is expressly excluded by the limitation in the instruction by the phrase "upon the lands appropriated." In support of its contention, that the instruction permits the recovery of speculative and remote damages, the cases of *Indianapolis, etc., Traction Co.* v. *Larrabee, supra; Indianapolis, etc., R. Co.* v. *Hill* (1909), 172 Ind. 402, 86 N. E. 414, and *Indianapolis, etc., R. Co.* v. *Branson* (1909), 172 Ind. 383, 86 N. E. 834, 88 N. E. 594, are cited.

The evidence shows that in the vicinity of the old private crossing the land was rolling, and the crossing was so located that it was practically on a level. By the new appropriation and reconstruction this crossing was destroyed. The new grade is so high and steep that ingress and egress, to and from the southwestern portion of the farm, over the railroad, if not practically impossible, is, at least, very difficult, and is so hindered as reasonably to cause annoyance and inconvenience. The "interruption," "annoyance" and "inconvenience" evidently relate to the effect of physical barriers against ingress and egress, and not to mental conditions caused by the operation of the railroad, and the instruction is not in conflict with the rules declared in the cases above cited, and not subject to appellant's charge of remoteness or speculation.

Instruction thirteen, given by the court, was as follows: "When a railroad company appropriates land and takes possession of the same and constructs its improvements thereon, it will be presumed, in the absence of proof to the contrary, that the improvements were properly and skillfully made, and where damages result therefrom to the remaining portion of the land from which said lands were taken, it will be presumed that the same were natural consequences of the appropriation and proper use of the lands so taken and in such case the owner of the lands from which the same was taken by said appropriation, should be fully compensated for all damages he has or will sustain on account of the taking of the lands for the use sought."

Appellant contends that this instruction authorized the jury to allow damages for injuries caused by earth and rock sliding and washing down from the sides of the embankments on appellee's lands outside the limits of the new right of way, and for such injuries appellant is not liable in the present action. Counsel for appellee concede the effect of the instruction, but insist that appellee has the right to recover in this action for such injuries. Appellee's witnesses generally included these injuries as elements in their estimates, and they were estimated by some witnesses, as damages to the extent of $2,000.

Damages are assessed in condemnation proceedings as of the date of the appropriation. *New Jersey, etc., R. Co.* v. *Tutt, supra.*

These damages are such as might reasonably be expected to result from the appropriation and the construction of the road in a proper and lawful manner. *Indiana, etc., R. Co.* v. *Allen* (1885), 100 Ind. 409.

The assessment should not cover damages resulting from the negligent construction of the road, nor from improper incroachments upon the land outside the right of way. *Roushlange* v. *Chicago, etc., R. Co.* (1888), 115 Ind. 106,

108, 17 N. E. 198; *Egbert* v. *Lake Shore, etc., R. Co.* (1893), 6 Ind. App. 350, 33 N. E. 659; *Manufacturers Nat. Gas Co.* v. *Leslie* (1899), 22 Ind. App. 677, 51 N. E. 510; 2 Lewis, Eminent Domain (2d ed.) §§599, 649, 651; 15 Cyc. 728.

For any injury to the real estate outside the limits of the right of way, caused by negligent construction or maintenance, or trespass, the owner has his remedy by common law action for damages. *Roushlange* v. *Chicago, etc., R. Co., supra;* 15 Cyc. 729; *Miles* v. *City of Worcester* (1891), 154 Mass. 511, 28 N. E. 676, 13 L. R. A. 841, 26 Am. St. 264. The court erred in giving the thirteenth instruction.

Appellant objects to the fourteenth instruction given, because, it claims, the instruction authorizes the jury to award damages for changes made wholly on its old right of way. The instruction is not open to this objection. The fifteenth instruction given, if erroneous, was harmless.

The sixteenth instruction given was as follows: "It is the law that where a spring of water rises on the land of one landowner and the water therefrom flows in its natural course and channel across said land and onto and over the lands of an adjoining proprietor, the owner of the lands onto and over which water so flows has the right to the use of said water flowing across his land and to have said water continue to flow over his said lands, and neither the owner of the lands on which said spring rises nor any one else would have the right, without his consent, to change the course of said stream of water so as to divert the same from his lands or deprive him of the use of the same."

Appellant's counsel contend that this was erroneous, because the evidence fails to show that there was any natural watercourse in which the water from the Carter spring flowed across appellee's land. Counsel are in error in this respect. D. W. Carter testified that the water of the spring "in its natural flow" passed on appellee's land, very close

to the old south right of way fence, and was used by appellee for stock water. Where the spring water flowed on appellee's land formerly, was within the limits of the new appropriation. It now flows wholly on appellant's right of way, and does not touch appellee's land.

Counsel also object to this instruction, because it proceeds on the theory that appellee cannot enter on the right of way and pipe the spring water flowing therefrom onto his own land. In order to determine this question, it is necessary to consider the nature of the possession acquired by a railroad in a right of way which it condemns. Nothing was here reserved to the owner by the instrument of appropriation. In *Smith* v. *Holloway* (1890), 124 Ind. 329, 24 N. E. 886, the nature of the easement acquired by a railroad in a spring water stream was incidentally involved, and it was said by this court: "The point made by the plaintiff that the grant of the right of way to the railroad company precludes the appellee from maintaining this action is without substantial merit. The owner of the fee remains the owner of springs, streams, minerals, and the like, for all that he grants is an easement. The owner cannot interfere with the free use of the right of way, but subject to this use he may make all lawful use of the land."

In *Consumers Gas Trust Co.* v. *American Plate Glass Co.* (1904), 162 Ind. 393, 68 N. E. 1020, it was held that a railroad company may be enjoined by the lessee of the fee from sinking a gas well on the right of way.

In *Beacon* v. *Pittsburgh, etc., R. Co.* (1892), 1 Pa. Dist. Rep. 618, it was held that where a spring of water was within the right of way of the railway company, and could, by pipes, be conducted by the landowner to a place on his property, outside the right of way, the owner of the fee had the right so to conduct it, and consequently he could not recover from the company the entire value of the spring, but only so much as it would cost to make the water from the

spring as useful and convenient outside of the right of way as it was before.

In *Dilts* v. *Plumville R. Co.* (1909), 222 Pa. St. 516, 71 Atl. 1072, it was held that in the appropriation by a railroad company of an owner's land, on which there was a spring, the company did not secure title to the waters thereof, but that it remained in the owner of the fee, and the latter might conduct the water by pipes wherever he desired, and that the damages would depend on the extent of the injury to the use of the spring, caused by the appropriation.

In the above case, it was held, in consonance with the weight of modern authority, that the company has the right to the exclusive possession of the surface of the land appropriated. *New York, etc., R. Co.* v. *Comstock* (1891), 60 Conn. 200, 22 Atl. 511; 2 Lewis, Eminent Domain (2d ed.) §§746, 849.

In view of the responsibility of railway companies, safely to carry persons and property, and the great hazard to life and property from obstructions on the tracks, it must be held that the company's right of possession to the surface of the right of way is practically exclusive; yet, under the facts shown by the evidence here, appellee might at least conduct the water from the stream through pipes onto his land outside the right of way, without any practical interference with the company's exclusive possession of the appropriated strip on which the stream is now flowing. Nor do we perceive any reason why he might not divert the water from the right of way by other means than pipes, provided that such diversion constituted no practical interference with appellant's right to exclusive possession of the surface of the land appropriated.

In case the water shall be diverted by the use of pipes, or by other means, so as not to interfere materially with appellant's right to the exclusive possession of the surface of the right of way, appellee's damages would be measured, not by the entire loss of the use of the

water, but by the amount of money necessarily required to be expended in diverting the water to his land, outside of and adjoining the right of way, in such manner as to make it as useful to the land as it was before the appropriation; and in case it cannot be made as useful as heretofore, there should be added to the above amount a sum equal to the diminution in value between the former and latter uses.

In no event, however, could the amount of damages properly allowable exceed the value of the use of the flowing water as it existed before the appropriation.

29.    For the above reasons, the court erred in giving to the jury instruction sixteen.

Over appellant's objection, the court permitted one Mc-Clain to testify that appellant, in its reconstruction, filled up and destroyed the subway under the Plainfield road that had been used by appellee for a live-stock way between his land on the east and west sides of the highway. Appellant's objection to this testimony was that the subway was located within the limits of a public highway, and consequently appellee had no easement therein; that the subway was a public, and not a private structure.

Appellee testified that the waters from Carter spring flowed through the subway, and the latter was located just south of the old right of way and within the limits of the new appropriation.

Appellee was the owner of the fee of the land over which the Plainfield road was located. As long as he does not interfere with the public use, the owner of the fee in a suburban highway may use it as he sees fit. *Terre Haute, etc., R. Co.* v. *Zehner* (1906), 166 Ind. 149, 76 N. E. 169, 3 L. R. A. (N. S.) 277, and authorities cited; 37 Cyc. 207. The use of the subway by appellee in nowise conflicted with the rights of the public in the use of the highway, and consequently under the evidence here, the taking of the subway by the new appropria-

tion constituted an element of damage, and the court did not err in admitting the testimony.

On cross-examination of McClain, appellant asked the following question: "I will ask you, Mr. McClain, if you don't know that in the settlement of our right of way with Wysing, that we bought the entire sixty acres as a kind of compromise sale?" The court sustained appellee's objection to the question. The witness had stated that the Wysing land was sold in the spring of 1906 at a given price per acre.

The court erred in sustaining appellee's objection to the question. Sales of this kind, even if not by way of actual compromise, are not a fair criterion of value. They are affected by an element which does not enter into sales made in the ordinary course of business. 2 Lewis, Eminent Domain (2d ed.) §447.

On cross-examination of one Ader, witness for appellant, appellee's counsel asked this question: "Mr. Ader, don't you know strips of land similar to this piece of land in Hendricks county, along there in Mr. Smith's neighborhood, have brought from two to four hundred dollars an acre?" Appellant objected to the question, for the reason that, in the purchase of additional right of way, the price paid per acre in that locality was not only the value of the land taken, but additional damages consequent on the taking. The court overruled the objection. It is evident that the court, parties and witness understood that the "strips" in question referred to parcels of land purchased by appellant from persons in that vicinity for its additional right of way. It was error to overrule the objection. As the price paid for such strips included not only the value of the land purchased, but the damages to the remainder of the tracts, the evidence would involve the determination of collateral issues. Evidence of this character is not admissible anyway, because purchases of land for a

right of way are usually in the nature of a compromise, and afford no fair criterion of value. *Presbrey* v. *Old Colony, etc., R. Co.* (1869), 103 Mass. 1; *Amoskeag Mfg. Co.* v. *Worcester* (1881), 60 N. H. 522; *Peoria Gas, etc., Co.* v. *Peoria Terminal R. Co.* (1893), 146 Ill. 372, 34 N. E. 550, 21 L. R. A. 373; *Laing* v. *United New Jersey R., etc., Co.* (1892), 54 N. J. L. 576, 25 Atl. 409, 33 Am. St. 682; 2 Lewis, Eminent Domain (2d ed.) §447.

Many other questions are presented in appellant's brief, but as they are not likely to arise in another trial of the cause, they will not be considered.

We cannot say that the above errors relating to the exclusion and admission of testimony were not harmful to appellant. It affirmatively appears that the thirteenth and sixteenth instructions given by the court were harmful, and for these errors the cause must be reversed. Judgment reversed, with instructions to grant appellant's motion for a new trial.

Monks, J., concurs in result.

NOTE.—Reported in 97 N. E. 164. See, also, under (1) 29 Cyc. 752; (2) 2 Cyc. 853; (3) 2 Cyc. 852, 891; (4) 2 Cyc. 875; (5) 3 Cyc. 530; (6) 2 Cyc. 875; (7) 3 Cyc. 139; (8) 8 Cyc. 1058; (9) 15 Cyc. 954; (10) 15 Cyc. 864; (11) 15 Cyc. 1022; (12) 14 Cyc. 1172; (13) 38 Cyc. 1615; (14) 15 Cyc. 1026; (15) 15 Cyc. 748, 902; (16) 31 Cyc. 90; (17) 15 Cyc. 903; 40 Cyc. 654; (18) 40 Cyc. 645; 97 Am. Dec. 565; (19) 15 Cyc. 752; (20) 15 Cyc. 696, 752; (21) 38 Cyc. 1711; (22) 15 Cyc. 704, 729, 903; (23, 24 and 25) 15 Cyc. 903; (26) 15 Cyc. 719; (28) 33 Cyc. 351; (29) 15 Cyc. 903; (30) 15 Cyc. 1023; (31) 15 Cyc. 706; (33) 15 Cyc. 646, 684; (34) 16 Cyc. 1138; (35) 16 Cyc. 1136; 1137. For a discussion of the price paid by the condemnor for other property for use in the same enterprise as evidence of the value of land condemned, see 20 Ann. Cas. 695.